[Crim. No. 223.   Fourth Appellate District.—November 25, 1931.]

THE PEOPLE, Respondent, v. WILLIAM I. KINSLEY, Appellant.

Herman Allen for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, Thomas Whelan, District Attorney, and John T. Holt, Deputy District Attorney, for Respondent.

FREEMAN, J., *pro tem.*—The defendant was charged by an information filed by the district attorney with the offense of committing a felony by violating a statute entitled, "An Act to regulate the sale and use of narcotics in the State of California, and providing a penalty for the violation thereof," approved May 4, 1929 (Stats. 1929, p. 380), as follows: "The said William I. Kinsley on or about the 10th day of September, A. D., nineteen hundred and thirty at the said County of San Diego, State of California, and before the filing of this information did wilfully, unlawfully and feloniously sell, furnish, and give away and offer to sell, furnish and give away a preparation of morphine containing more than 1/4 grains of morphine to the avoirdupois ounce; the said William I. Kinsley was not then and there a jobber, wholesaler or manufacturer to pharmacies as defined in Section 1 of an act entitled 'An act to regulate the practice of pharmacy in the State of California and to provide a penalty for the violation thereof and for an appointment of a board to be known as the California State Board of Pharmacy,' approved March 20th, 1905, and acts amendatory thereof, and said preparation aforesaid then and there being sold, offered for sale and given away, was not being so sold, offered for sale and given away upon the written order or prescription of or to any physician, dentist or veterinary surgeon licensed to practice in the State of California." To this information the defendant demurred orally as follows: "on the ground that it does not state facts sufficient to constitute a public offense under the laws and statutes of the State of California". The court overruled this demurrer and trial then proceeded before a jury. A verdict was rendered finding

the defendant guilty of the charge stated in the information. From this verdict and the judgment of the court based thereon defendant appealed.

The defendant's grounds of appeal are: First, that the judgment of conviction is against law; second, that the information does not substantially conform to the requirements of sections 950, 951, 952 of the Penal Code of the state of California; third, that the facts stated in said information do not constitute a public offense.

■ Appellant in his brief assigns as error: First, that the court erred in overruling appellant's demurrer to the information; second, that the evidence is insufficient to support the verdict. The court properly overruled the oral demurrer. Section 1005 of the Penal Code requires "a demurrer to be in writing, signed by defendant or his counsel and filed. It must distinctly specify the grounds of objection to the indictment or information or it must be disregarded". The clerk's transcript shows that on the twenty-third day of June, 1931, appellant entered a plea of "not guilty as charged in the information". It further appears therefrom that on July 15, 1931, the day appointed for trial, appellant, without withdrawing his plea to the information, interposed an oral demurrer at the beginning of the trial. ■ All objections which appear on the face of the information are waived by appellant's failure to demur before plea, except want of jurisdiction in the court or failure to state facts which constitute a public offense, which may be taken advantage of at any time in the course of the proceedings. (Sec. 1012, Pen. Code; *People* v. *Villarino,* 66 Cal. 228 [5 Pac. 154].) ■ The demurrer herein is only that the information does not state facts sufficient to constitute a public offense. There is no demurrer to want of jurisdiction of the court. As the information states the offense in the language of the statute, to which specific reference is made, it is sufficient (*People* v. *King,* 125 Cal. 369 [58 Pac. 19].) ■ Appellant complains that the information fails to disclose to whom the morphine was sold. This is a defect which must be raised by a special demurrer and cannot be raised by a general demurrer as was here attempted. Furthermore, it must be done before trial. (*People* v. *Rodley,* 131 Cal. 240 [63 Pac. 351]; *People* v. *Welton,* 190 Cal. 236 [211 Pac. 802]; *People*

v. *Perfetti*, 88 Cal. App. 609 [264 Pac. 318].) Finally, even if appellant had pointed out the defect of which he now complains by special demurrer his objection would not have been well taken (*People* v. *Faust*, 113 Cal. 172 [45 Pac. 261]; *People* v. *Malone*, 68 Cal. App. 615 [229 Pac. 1000]).

■ The contention is made that the information which charges appellant with selling, furnishing and giving away, and offering to sell, furnish and give away morphine is fatally defective under the provisions of section 954 of the Penal Code, as stating separate offenses in the same count. The objection is not well taken, since it is apparent that the information charges appellant with the doing of various acts, any one of which or all of which constitute a single violation of the statute mentioned in the information (*People* v. *Frank*, 28 Cal. 507; *People* v. *Leyshon*, 108 Cal. 440 [41 Pac. 480]). Appellant was convicted of but one offense, to wit, selling morphine. The other offenses, such as furnishing and giving away, alleged in the information, were and are surplusage and did not prejudice the defendant. ■ The record indicates that the evidence produced and the verdict rendered were directed to a particular sale of morphine. Under such a situation the prosecution herein would bar another on this issue. (*People* v. *Steelik*, 187 Cal. 361, 371 [203 Pac. 78].)

■ Appellant further contends that the information must specifically negative the various exceptions contained in the act, which are described in the following language:

"Provided, however, that any licensed physician may prescribe for or furnish or administer to his patient as a physician of such patient employed by such patient as such physician, when such patient is suffering from some disease, ailment or injury, other than narcotic addiction and which such physician in good faith believes requires such treatment for such disease, ailment or injury, any of the drugs mentioned in section 1 hereof, in such quantity and for such length of time as may be reasonably necessary."

The act complained of in the information is the unlawful sale of morphine. The evidence showed that appellant is a physician licensed to practice in this state, which fact comes within the above-quoted exception or proviso of the statute. However, from the fact that he is a physician so licensed, it does not necessarily follow that he had the legal right

under all circumstances to sell the specified narcotics. If appellant in making the sale did not act in good faith in prescribing the drug, he violated the statute. The fact that appellant is a physician does not constitute a part of the offense charged, nor is this fact a part of the description of the offense. The case of *Ex parte Hornef*, 154 Cal. 355, at page 362 [97 Pac. 891, 893], states the rule on this point applicable to the case at bar. That case holds that it is not necessary to allege or prove the exception or proviso contained in the statute, where the exception or proviso is no part of the offense alleged. It is there stated "the proviso is a statement of an exception which in no degree qualifies the offense created by the statute, but simply exempts certain persons from the operation of such statute". In the case at bar the statute excepts licensed physicians acting in good faith. This, however, is a matter of defense. Therefore under the rule in *Ex parte Hornef, supra,* the objection that the information should negative the exceptions specified in the act is not well taken.

Appellant urges that the evidence is not sufficient to sustain the verdict, and that the verdict is against the law and the evidence. This contention requires us to consider the evidence under the familiar rules that in support of the verdict it must be presumed that the jury was satisfied with the testimony covering the charge (*People* v. *Ferrari,* 80 Cal. App. 182 [251 Pac. 692]), and that where there is a conflict between the testimony given on behalf of the People and that produced on behalf of the defendant, it is not within the province of a reviewing court to hold that the jury erroneously decided as to which witnesses told the truth and that every intendment must be resolved in favor of the verdict (*People* v. *Lyons,* 80 Cal. App. 257 [251 Pac. 648]).

In the case at bar it is admitted that a sale of morphine was made to Mrs. Longino by appellant. He seeks to justify this sale on the ground that he prescribed or sold to her morphine, in good faith as a physician. The complaining witness testified that she went to appellant's office on several occasions and bought morphine, paying him $80 for 1,000 quarter grains at one time and $80 at another and $50 at another. These purchases extended over some eight months' time. The first and only time appellant

examined her as to her condition, to discover what treatment
he should give, was testified to by her as follows: "Q. And
what was the occasion of your seeing him at his office on
Fifth Avenue at that time? A. I went up to get some
morphine. Q. Will you explain just exactly what happened
when you went into the Doctor's office, what you said to
him, and what he said to you, and what he did, and what
you did? A. Well, I merely told him I was feeling very
badly and needed a narcotic and told him what kind I
wanted; and he asked me how much money I had. And
I told him I was prepared to pay a reasonable price, any-
thing within reason. Q. Were you suffering from any disease
at that time? A. No, sir; not that I know of. Q. What
did you tell him you wanted these narcotics for? A. Well,
he knew—could tell I was addicted when I went up there.
. . . Q. After you told him you wanted these narcotics,
what did he say? A. He said he would get them for me.
Q. Did he or did he not at that time give you any physical
examination? A. He gave me a—what he called a physical
examination. Q. What did that consist of? A. Well, I
removed my clothing, and he listened to my heart, I believe.
I think that's— Q. Did he use a stethoscope? A. I can-
not say for sure. I believe he did use a stethoscope on my
heart. I don't know. Is a stethoscope ever put on your
lungs? What is it? I am kind of—I know he listened to
my heart. Q. You know that a stethoscope is one of those
things— A. I think he did put one of those things on. I
can't say for certain. Q. And what did he say after he
listened to, or examined, your heart? A. He just didn't
say anything; no remarks. . . . Q. How long were you in
the office on this first occasion? A. Probably, as best I could
say, maybe thirty minutes; something like that."

Robert H. Dundas, witness for the People, testified that
he was the deputy chief of the division of narcotic enforce-
ment of the state of California; that the records of his
office contain reports which physicians are required to make
of prescriptions of narcotics to patients; that he had six
or seven times searched the records of his office to determine
whether or not appellant had made any report of the
prescription of narcotics in the treatment of Louise Longino
or Louise Beach (the latter name being the name by which
Louise Longino was known to appellant), and that he

found none. The witness further stated that he had received two telegrams from appellant relating to his arrest, one of which contained the following language: "The woman in person named is not on my books for treatment." This telegram was dated November 24th. The witness further testified that on November 3d appellant had sent a telegram which contained the following statement: "This woman has a chest case either tubercular or enphysema." The witness Whipple stated that at the hearing of appellant by the state medical board appellant stated he was treating Mrs. Longino by giving her the "Reduction cure." This witness further testified as to this examination: "Q. Did he state whether or not he had ever given or sold narcotics to Mrs. Longino? A. He did. Q. What did he say in that regard? A. The attorney for the Medical Board asked him if it wasn't possible that he had given her a certain amount of narcotics, naming the amount— which I do not recall—it was a small amount. He said, 'It's possible I did.' Then he asked him: 'Isn't it a fact you gave her a thousand at a time?' He said: 'No, I do not think so; only 750.' Q. Did he make any statement as to any examination that he made of Mrs. Longino? A. Yes, he did. Q. What did he say in that regard? A. He said he made an examination of her chest and found a tubercular trouble. Q. And did he say for what purpose he was giving these narcotics to Mrs. Longino? A. Well, just to ease her along and keep her out of pain. . . . Q. Was anything said about directions being given to Mrs. Longino at the time these narcotics were supplied her? A. Yes. Dr. Phillips, I believe, asked Dr. Kinsley if he had told this— or given this woman any instructions as to her use of these narcotics. And the Doctor's reply was that he thought she knew, or words to that effect, and that he supposed she would take enough and not abuse the privilege—just enough to make her easy."

Dr. Paull, called as a witness for respondent, testified that he had examined Mrs. Longino's chest, and further testified as follows: "Q. State what you found, Doctor, as far as any pathological condition is concerned. A. Well, I think it might be summed up by saying there was evidence of a healed tuberculosis in the right lung, at the top. Q. Could you determine whether or not that was of long

standing? A. Well, I do not think you could be more definite than to say it is from one to twenty years—from one year up to any number of years, really. We just know it's healed. Q. Was there any evidence in your examination of any recent disturbance? A. No, sir.''

From this testimony it is apparent that morphine had been sold to Mrs. Longino several times by appellant. It is also apparent that only once did he make an examination and that there was then no evidence of hemorrhage. It is obvious that it was not necessary to prescribe morphine to her, and that a cursory examination was given only for the purpose of furnishing an excuse or in pretended compliance with the law. At the times the other sales were made no examination was given to determine the necessity of prescribing morphine. Appellant made no record nor did he report the sale to the medical board. Appellant's testimony differed as to the purpose of prescribing the morphine, and he also testified that he did not direct her as to the quantity she should take. He ''thought she knew'' and ''thought she would take enough and not abuse the privilege''. The jury on this and other evidence returned a verdict of conviction, and under the rule heretofore stated, this verdict must be sustained if there is any evidence which fairly sustains it. It is obvious that ample evidence was produced to sustain the verdict.

Appellant contends that the complaining witness, Mrs. Longino, was an accomplice under section 1111 of the Penal Code and that he could not be properly convicted on her uncorroborated testimony. The witness, Mrs. Longino, to whom the morphine sulphate was sold, was not an accomplice. Section 1111 of the Penal Code reads in part: ''An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.'' Under this definition the witness, Mrs. Longino, was clearly not an accomplice. She was the purchaser. She did not sell, give away, furnish, etc. However, the point is of little consequence for appellant himself took the witness-stand and his testimony corroborated in every material particular the testimony of Mrs. Longino. The testimony, admission and conflicting statements of a defendant are sufficient corroboration of the testimony of

an accomplice to sustain a conviction. (*People* v. *Sullivan*, 144 Cal. 471 [77 Pac. 1000] ; *People* v. *Watson*, 21 Cal. App. 692 [132 Pac. 836].)

The *corpus delicti* was conclusively established when appellant himself took the witness-stand in his defense. (*People* v. *Kelley*, 70 Cal. App. 519, at page 523 [234 Pac. 110].) There is nothing to indicate that the sentence was excessive, when all of the evidence in the case is considered, and it must be further observed that appellant did not receive the maximum sentence of six years, but was sentenced to be confined for a period of three years.

For the reasons herein given it is therefore ordered that the judgment of the trial court be and the same is hereby affirmed.

Barnard, P. J., and Jennings, J., concurred.