[Crim. No. 1380.   Third Appellate District.—August 13, 1934.]

THE PEOPLE, Respondent, v. J. L. BILL, Appellant.

Clifford A. Russell and Archibald M. Mull for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was convicted of having possession of cocaine contrary to the provisions of the California Statutes of 1929 (Stats. 1929, p. 380; 2 Deering's Gen. Laws of 1931, p. 3007), regulating the sale or possession of habit-forming narcotics.

On appeal it is asserted there is a fatal variance between the allegations of the information which charge him with the possession of "a *preparation* of cocaine" and the proof that the substance which was found in his hotel room consisted of clear cocaine rather than a preparation thereof; that the evidence fails to show the defendant was *possessed* of the narcotic; that the prosecution failed to allege or prove that the defendant was not authorized by a written prescription to possess the drug; that the court erred in giving to the jury certain instructions and that the district attorney was guilty of prejudicial misconduct in the course of the trial.

The information sufficiently charges the defendant with the offense of having possession of cocaine contrary to

the provisions of the statute above referred to. The information refers to the act by quoting the title thereof and then alleges that the defendant, on the twenty-sixth day of January, 1934, in the county of Sacramento, California, "did then and there wilfully and unlawfully and feloniously have in his possession a preparation of cocaine; contrary to the form, force and effect of the statute. . . . " The act provides that:

"It shall be unlawful for any person, . . . to have in their or his possession any cocaine, . . . or any of the salts, derivatives or compounds of the foregoing substances, or any preparation or compound containing any of the foregoing substances or their salts, derivatives or compounds except-ing upon the written order or prescription of a physician. . . . "

The information is couched in the language of the statute and conforms to the provisions of sections 950–952 of the Penal Code. It sufficiently informs the defendant that he was charged with the unlawful possession of cocaine.

■ The information was not defective for failure to allege that the Narcotic Drug Act under which the defendant was charged with the "unlawful and felonious" possession of cocaine was amended in 1931 and again in 1933 (Stats. 1931, p. 1496; Stats. 1933, p. 781), since it did specifically set forth the title to the act, and alleges that the statute was approved May 4, 1929. The original act of 1929 and also the act as amended by each successive legislature made it unlawful for a person *to have in his possession any cocaine.* In neither of the amendments to the statute was the offense changed in that regard. The only object in referring to a statute under which one is charged with an offense is to inform him of the specific crime with which he is accused. In the present case the defendant could have had no doubt regarding the specific offense with which he was charged. A reference to subsequent amendments of the statute would have furnished him with no further information in that regard.

■ The information is not defective because it fails to allege that the defendant did not hold a physician's prescription authorizing him to have possession of the cocaine. Nor was it necessary for the prosecution to affirmatively prove that the defendant held no such prescription. The excep-

tion which exempts one from criminal liability for possessing narcotic drugs as provided for by statute is a matter of defense. (*In re Lord,* 199 Cal. 773 [250 Pac. 714]; *Ex parte Hornef,* 154 Cal. 355 [97 Pac. 891]; *People* v. *Moronati,* 70 Cal. App. 17 [232 Pac. 991]; *People* v. *Kinsley,* 118 Cal. App. 593 [5 Pac. (2d) 938]; *People* v. *Ruddick,* 107 Cal. App. (Supp.) 785, 793 [288 Pac. 45].) The information alleges that the defendant was wilfully, unlawfully and feloniously possessed of the cocaine. If the accused person is *unlawfully* possessed of a narcotic drug, it follows that he does not hold a physician's prescription therefor. · The possession of a prescription for the drug makes it lawful for him to have the cocaine. The exception to the statute which authorizes the possession of the drug is not a necessary part of the offense defined therein, but provides conditions under which one is excused therefrom. It furnishes a defense which is peculiarly within the personal knowledge of the accused. It would be extremely difficult for the prosecution to affirmatively prove the negative condition which exempts one from criminal liability under this statute. For that reason the law neither requires the allegation in the information of this exception nor affirmative proof thereof on the part of the prosecution. The opinion in the Lord case, *supra,* says in that regard:

"The authorities in this state are without conflict 'that such exceptions and provisos were to be negatived in the pleading only where they are descriptive of the offense or define it, and that where they afford matter of excuse merely, they are to be relied on in defense'."

The foregoing declaration of principle is not in conflict with the case of *Morrison* v. *California,* 291 U. S. 82 [54 Sup. Ct. 281, 78 L. Ed. 664], upon which the appellant in this case relies. That case is readily distinguishable from the case at bar. In that case the appellant was charged with a conspiracy to violate the California Alien Land Law by placing an alien Japanese citizen who was ineligible to citizenship in the United States in possession of agricultural land in California. Primarily it is lawful for any individual to own and possess real property. The very gist of the offense prohibited by the Alien Land Law is that one who is ineligible to citizenship in the United States may not own or possess land in California. Mr. Justice Cardozo in

delivering the opinion of the Supreme Court said in that regard:

"In the law of California there is no general prohibition of the use of agricultural lands by aliens, with special or limited provisos or exceptions. To the contrary, it is the privilege that is general, and only the prohibition that is limited and special."

In the present case the statute 'which is enacted under the police powers of the state renders it unlawful for all persons to sell or possess narcotic drugs, except when they hold valid prescriptions therefor for medicinal purposes. In other words, the general act prohibits all individuals from selling or possessing the drugs. It is only by virtue of the exception to that law that one is permitted to possess the drug when he holds a prescription therefor.

The appellant asserts the judgment is not supported by the evidence for the reason that the prosecution failed to affirmatively prove that cocaine is a "habit forming drug". There is no merit in that contention. The title to the Narcotic Drug Act is the only place where that term is used. It is unnecessary to affirmatively prove that cocaine is a habit-forming drug. It is common knowledge that the inordinate use of cocaine tends to establish one of the most tenacious and harmful habits known to man. The use and harmful effect of cocaine and kindred drugs have increased in America to an alarming extent. Regarding the effect of the use of cocaine it is said in volume V of The Americana:

"Cocaine is sometimes used in the treatment of the morphine habit, not infrequently with the result that the victim only exchanges one form of bondage for another no less pernicious. Many persons innocently acquire the cocaine addiction through the medium of various nostrums ostensibly intended for the cure of nasal catarrh, hay fever, etc. The temporary alleviation of his symptoms produced by the compound induces the sufferer to continue its use until he is fairly in the grip of a servitude leading to certain destruction unless its fetters are cast off by the exercise of almost superhuman fortitude. The cocaine habitue has to suffer from progressive loss of flesh and strength, digestive and circulatory disorders, trembling of the limbs, insomnia, headache, vertigo, etc. Hallucinations and even outbreaks of maniacal fury are not unusual and there is complete

decadence of the mental and moral qualities. The cocaine fiend respects no convention or obligation, and will lie, steal, or use any other base means to gratify his passion for the drug, being lost to all considerations of duty or social position.''

Courts will take judicial notice of the fact that the inordinate use of cocaine tends to create an irresistible craving and forms a habit for its continued use until one becomes an addict thereof, just as courts will take judicial notice of the fact that whisky, rum, brandy and gin are intoxicating liquors without the necessity of specifically proving that fact. (2 Wharton's Criminal Law, p. 1975, sec. 1796.)

■ It is claimed there is a fatal variance between the allegation of the information which charges the defendant with the ''possession of a preparation of cocaine'', and the proof adduced which merely shows that the drug was cocaine. We are of the opinion this criticism is not well founded. The statute prohibits the sale or possession of cocaine or any derivative, compound or preparation thereof. The offense and the penalty therefor are the same regardless of whether the sale or possession of the prohibited substance consists of a pure drug or a compounded preparation thereof. Cocaine is a vegetable alkaloid which is extracted from the coca shrub. The juice of the shrub is subjected to chemical change by boiling and evaporation until it crystallizes in minute prisms. The exact composition of cocaine naturally differs somewhat. The base of the substance popularly known as cocaine is hydrochloride of the true alkaloid of the leaves of the coca shrub. Many other compounds are prepared from that base. But in any form in which they may exist, so long as they are compounded from the cocaine base, the sale or possession of the substance is prohibited by law. The defendant is not misled or prejudiced by the fact that the proof shows that he was unlawfully possessed of a preparation of cocaine containing a larger proportion of that drug than he was charged with holding.

■ The evidence is sufficient to have warranted the jury in holding that the cocaine was found in the possession of the defendant. While there is a conflict of evidence, the record shows that the officer went to the defendant's room number 9 in the Japanese Hotel El Paso in Sacramento, where he found the defendant and a white girl by the name

of Evelyn Moore. She was lying on the bed in that room. One package of cocaine was found on the bed, and five other packages of cocaine were discovered on the window sill in the lavatory on the same floor of the hotel. The officer exhibited these packages to the defendant and charged him with operating a narcotic plant and threatened to search a room which the defendant admitted he had occupied at the Fairmont Hotel. It was claimed by the officer that Evelyn Moore was implicated with the defendant in disposing of the cocaine. The defendant replied: "You have got all the stuff, right there, that I got. . . . That is all I have got; that is just what I had left, . . . when I quit. . . . She (Evelyn Moore) has got nothing to do with this. . . . It is mine; it isn't hers. . . . Q. Both the stuff in the lavatory and on the bed? A. Yes."

■ The court did not err in instructing the jury that the defendant was charged with a violation of the Narcotic Drug Act which was identified by quoting *verbatim* the title thereof and adding thereto the following language, "approved May 4, 1929, and acts amendatory thereof". The act was in fact approved May 4, 1929. Neither of the subsequent amendments changed the nature of the offense with which the defendant was charged. The reference to the Narcotic Drug Act was merely for the purpose of identifying the statute under which the defendant was charged. A reference to the date of its approval and to the amendments thereof was probably unnecessary but harmless. Nor did the court err in furnishing to the jury forms of verdicts which referred to the act under which the defendant was charged by the use of the challenged language, "approved May 4, 1929, and acts amendatory thereof".

■ It is contended the court erred in failing to instruct the jury regarding the definition of the word "possession" and the term "habit forming narcotic". The court did fully and fairly instruct the jury upon the general principles of law applicable to the charge of unlawfully possessing cocaine. The portion of the act applicable to the charge against the defendant was read to the jury. No proposed instructions defining the word "possession", or the term "habit forming narcotic", were offered by the defendant. No instruction upon any specific subject was offered by the defendant. Both the word "possession" and the term

"habit forming narcotic" are well understood by all persons of average intelligence. The record leaves no reasonable question regarding the fact that the defendant was actually possessed of cocaine. It was found in the hotel room occupied by him and he admitted that it belonged to him. Even though the cocaine were found in the joint possession of the defendant and Evelyn Moore, he would be guilty of violating the statute prohibiting the possession of narcotic drugs. (*People* v. *Le Baron,* 92 Cal. App. 550 [268 Pac. 476].) Regarding the necessity of offering instructions upon any special defense or point relied upon by the defense, it is said in *People* v. *Scofield,* 203 Cal. 703, 709 [265 Pac. 914] :

" 'It is the duty of the court in criminal cases to give, of its own motion, instructions on the general principles of law pertinent to such cases, when they are not proposed or presented in writing by the parties themselves. But it is not its duty to give instructions upon specific points developed through the evidence introduced at the trial, unless such instructions are requested by the party desiring them.' "

We are of the opinion the court did not err in failing to instruct the jury on its own motion regarding the definitions of the word "possession" and the term "habit forming narcotic".

The court did not err in admitting in evidence the packages of cocaine which were found in the bedroom of the defendant and in the lavatory. The defendant admitted that they belonged to him. After an examination of the contents of the packages and an analysis thereof, a chemist testified that they contained cocaine. This rendered them competent evidence so as to entitle them to be admitted in evidence.

It was not prejudicial error to permit Evelyn Moore to answer the question, "Why were you released from custody?" Her answer to that interrogatory was, "I don't know why." It is claimed her arrest and subsequent discharge from custody furnish incompetent evidence which might have led the jury to believe she did not have the custody of the cocaine. But that is immaterial, since the defendant admitted the packages belonged to him, and at least one of them was found in his immediate presence in his hotel room.

It was not prejudicial misconduct on the part of the district attorney to have said in the course of his argument to the jury: "It was Bill's stuff, and she (Evelyn Moore) was up there buying it from Bill, and getting a shot to help herself." Upon objection to that argument, and on motion to strike it from the record the court instructed the jury to disregard the statement in the following language: "In so far as the statement made by the district attorney that she went up there to get a shot, *and what he said in connection with it,* you will disregard it." In view of the entire record, we are not prepared to say it was not legitimate argument for the district attorney to assume that Evelyn Moore was in the defendant's bedroom to purchase some of the cocaine or even to procure "a shot" of the drug. At least, the statement was harmless, for the jury was directed to disregard it.

Finally, it is contended the court abused its discretion in refusing to hear a motion for or to grant probation to the defendant. The hearing or granting of a motion for probation of one who has been tried and convicted of a crime rests in the sound discretion of the trial judge. There was no abuse of discretion on the part of the trial judge in summarily denying the motion for probation without submitting the matter to the probation officer for investigation and recommendation. The judge had heard the evidence in the case and was familiar with the entire record. Section 1203 of the Penal Code, as amended in 1931, provides in that regard:

"After the conviction by plea or verdict of guilty of a public offense in cases where discretion is conferred on the court . . . as to the extent of the punishment the court, upon application of the defendant or of the people or upon its own motion, *may summarily deny probation,* or at a time fixed may hear and determine in the presence of the defendant the matter of probation of the defendant and the conditions of such probation, if granted."

Under section 7 of the Narcotic Drug Act the defendant was sentenced to imprisonment in the state prison at San Quentin, for the term prescribed by law. That section as it was originally enacted and as amended prescribed the penalty applicable to this case for violation of the act in the following language:

"Any person convicted under this act for having in possession any of the drugs or substances mentioned in section 1 of this act, or their salts, derivatives, or any preparation thereof, . . . shall upon conviction for the first offense be punished by imprisonment in the county jail or in the state prison for not more than six years, . . . "

It rested in the sound discretion of the trial judge to determine whether the defendant should be punished by imprisonment in the state prison or only in the county jail. There appears to have been no abuse of discretion on the part of the judge in determining that this defendant should be punished by imprisonment in the state prison.

There is no merit in the appellant's contention that his case was not brought to trial within sixty days after the filing of the information against him as provided by section 1382 of the Penal Code, for the reason that he was personally present in court with his attorney when the case was set for trial, and it was continued to a later date at his own request. Subdivision 2 of section 1382 of the Penal Code provides in that regard a cause must be dismissed by the court:

"2. If a defendant, *whose trial has not been postponed upon his application,* is not brought to trial within sixty days after the finding of the indictment, or filing of the information."

The information in this case was filed February 14, 1934. The cause was first set for trial for March 20, 1934. On the last-mentioned date the defendant was present in court with his attorney and "on motion of counsel for said defendant", the cause was reset for trial for April 16th, at which time the case was actually tried. By the express terms of the statute, the defendant waived his right to a dismissal of the action for failure to bring the cause to trial within sixty days from the filing of the information, by procuring a continuance of the time for trial at his own request. It is immaterial that the motion for a continuance was made by the attorney for the defendant. The defendant was present in court when the motion was made and failed to object thereto. In the absence of opposition thereto, it must be deemed that the motion for a continuance was made by the defendant's attorney at his request. At least he was present and acquiesced therein by failure to

object to the granting of the motion. When a defendant is present in open court with his attorney and fails to object to a continuance of the time of trial to a date beyond the limitation prescribed by section 1382, *supra,* he waives his right· to a dismissal of the action on that ground. (*People* v. *Standley,* 126 Cal. App. 739 [15 Pac. (2d) 180]; *In re Scott,* 81 Cal. App. 577 [254 Pac. 596]; *Ex parte Apakean,* 63 Cal. App. 481 [218 Pac. 768].)

The defendant appears to have had a fair trial, and there was no miscarriage of justice in his conviction.

The judgment and the orders are affirmed.

Pullen, P. J., and Plummer, J., concurred.