[Crim. No. 2405. First Dist., Div. Two. Dec. 31, 1946.]

THE PEOPLE, Respondent, v. JOSEPH GELARDI, Appellant.

Joseph P. Lacey and Walter H. Duane for Appellant.

Robert W. Kenny, Attorney General, Miriam E. Wolff, Deputy Attorney General, Edmund G. Brown, District Attorney, and Alvin E. Weinberger, Assistant District Attorney, for Respondent.

GOODELL, J.—The appellant was convicted of four violations of section 11160 of the Health and Safety Code after trial by the court sitting without a jury and was sentenced to serve one year in the county jail on each conviction, the sentences to run concurrently. He appeals from the judgment and from the order denying a new trial.

Section 11160 reads: "Except as otherwise provided in this division, no person shall possess, transport, sell, furnish, administer or give away, . . . a narcotic except upon the written prescription of a physician, dentist, chiropodist or veterinarian licensed to practice in this State." Section 11001 of the same code defines narcotics as follows: " 'Narcotics, as used in this division, means any of the following: (a) Cocaine. (b) Opium. (c) Morphine. (d) Codeine. (e) Heroin. (f) Alpha eucaine. (g) Beta eucaine. (h) Chloral hydrate. (i) all parts of the plant loco weed or of the plant cannabis sativa. . . ."

The information in four counts charged violations on April 12th, 16th, 20th and 23d, 1945. The sales in question were of morphine tablets, without written prescriptions therefor.

The appellant's attack is on four grounds: (1st) the claimed insufficiency of the information; (2d) that appellant was placed twice in jeopardy for the same offense and there was no separate finding on this plea; (3d) that he was the victim of an entrapment, and (4th) that the evidence is insufficient to support the conviction.

Appellant has been a licensed pharmacist for upwards of 20 years, and at the time in question conducted a drug store on Fillmore street, in San Francisco.

A woman who was a known drug addict, employed as an operator by one of the state narcotic inspectors, made the purchases in question. On April 12, 1945, about 8:45 p. m. she entered appellant's store, followed by the inspector, who stayed in the background to observe. He saw appellant and the operator engaged in a conversation lasting a minute or two; he saw money change hands and he saw the appellant hand something to her. She had been searched before entering and had been given a $20 bill. She came out with two one-grain morphine tablets and a $10 bill in change.

On April 16, three visits were made to the store by the operator accompanied by the inspector, whose role, as before, was that of observer. The first visit was in the morning, when the operator purchased 60 capsules of barbiturates (not involved herein without a written prescription. The second visit was in the afternoon at which time appellant refused to sell the operator any morphine without a written prescription, and referred her to a physician who had an office a few doors away. She called on this physician and was examined by him. Between his office and appellant's store there was a direct telephone line which had been installed for the purpose of telephoning prescriptions. Appellant testified that the doctor telephoned him to let her have some morphine and that he would follow it up with a written prescription. About 4 p. m. she entered the store with a $5 bill in her possession and came out with a one-grain morphine tablet and $2.50 in change.

On April 20, the operator and the inspector entered the store about 3 p. m. She handed appellant a prescription (for cough medicine); also a $20 bill which had been supplied by the inspector. She came out with a bottle of cough medicine, a half-grain morphine tablet and $8.65 in change. The cost of the cough medicine was $1.35. There was on the bottle an ordinary label. It was numbered and dated, it prescribed the dosage, and it gave the patient's name, the prescribing doctor's name (the physician already referred to) and the appellant's store name.

On April 23, the operator and the inspector made their last visit to appellant's store. As on all earlier visits, the conversation between the operator and appellant lasted not longer than two minutes. She had been supplied with a $20 bill and

a $5 bill. She came out with two half-grain morphine tablets and a box containing 46 nembutal capsules, but with no change. Two other inspectors awaited outside. The three inspectors then entered the store, confronted the appellant, and found the $20 bill and the $5 bill (the serial numbers having been noted beforehand) on the marble slab of the cash register. The inspector testified that when he questioned appellant as to these bills, appellant answered that he had received them on a sale of nembutal and ephedrine.

The record contains no denial by the appellant of these sales and no claim that there were any written prescriptions for them. The inspector went through appellant's prescriptions and found none covering any of the four sales. Appellant testified that he had acted on the strength of the doctor's telephone conversations and his promise to follow them up with written prescriptions. The doctor's testimony respecting the telephone conversations was vague and indefinite. The prosecution stresses the fact that the doctor took the time to write out a conventional prescription for the cough medicine (which cost only $1.35) but did not take the time to write any prescription for the narcotics.

The appellant's first point is that no public offense is stated in the information or in any count thereof.

Each count contains the accusation that on or about a given day appellant "did wilfully, unlawfully and feloniously sell, furnish and give away a narcotic, to-wit: Opiates, in violation of Section 11160, Health and Safety Code. . . ."

Section 1004 Penal Code provides for a demurrer on the grounds (subd. 2) that the information does not substantially conform to sections 950, 951 and 952, and (subd. 4) that the facts stated do not constitute a public offense. No demurrer, either general or special, was interposed in this case.

Appellant's first ground of attack is that the accusation does not show that the substance sold was any one of the nine narcotics within the definition of section 11001.

The way in which this information was drafted has invited this attack. The appellant was arrested for selling *morphine*. Instead of simply accusing him of selling a narcotic, to wit, *morphine* the pleader used the words "a narcotic, to-wit: Opiates," thereby following a general term with another broad and indefinite term. While an opiate is defined (Webster's New International Dictionary, 2d ed.) as "Any medicine containing, or derived from, opium . . ." it is also

there defined as "Anything which induces rest or inaction; that which quiets uneasiness." The "specification" of *opiates* adds nothing whatever to the information and it may be treated as mere surplusage (the same as the statutory words "furnish and give away" may be disregarded—see *People* v. *Kinsley*, 118 Cal.App. 593, 597 [5 P.2d 938]).

However, without any specification of either opiates or morphine the accusation is sufficient, for it follows the language of the statute, and nothing beyond that is required in the absence of a special demurrer (*People* v. *Kinsley*, 118 Cal. App. 593, 596 [5 P.2d 938] ; *People* v. *Pustau*, 39 Cal.App.2d 407, 412 [103 P.2d 224]).

Next, it is claimed that the information is fatally defective in failing to name the person to whom the narcotics were sold. "This is a defect which must be raised by a special demurrer . . ." (*People* v. *Kinsley, supra*) and, as held in that case, "even if appellant had pointed out the defect . . . by special demurrer his objection would not have been well taken. (*People* v. *Faust*, 113 Cal. 172 [45 P. 261] ; *People* v. *Malone*, 68 Cal.App. 615 [229 P. 1000])."

The next point raised is that the language of the information does not negative the exception in that there is no allegation that the sales were made without the written prescription of a physician. This is answered by the case of *People* v. *Kinsley, supra*, following *Ex Parte Hornef*, 154 Cal. 355, 362 [97 P. 891], and by *People* v. *Bill*, 140 Cal.App. 389 [35 P.2d 645], which is directly in point. Paraphrasing the last-cited case (p. 393), if the accused person *unlawfully* sells a narcotic, it follows that he does not hold a written prescription therefor. The cases hold that it is a matter of defense that the accused person made the sale *with* a written prescription. *People* v. *Fowler*, 32 Cal.App.2d Supp. 737, 742 [84 P.2d 326], and *People* v. *Smith*, 54 Cal.App.2d 587, 589 [129 P.2d 732] are to the same effect and *People* v. *Pierce*, 14 Cal.2d 639, 643 [96 P.2d 784] reaffirms this line of cases.

The appellant contends that his plea of once in jeopardy should have been sustained.

The basis for this attack is the fact (already discussed) that the information charges the sale of *opiates*, while appellant had been already charged in the municipal court with the sale of *opiates* on the same two occasions as those now involved and had pleaded guilty and paid his fine. The conviction of

that lesser offense, appellant argues, bars this prosecution for a higher offense.

Misdemeanor complaints were filed in the municipal court charging several sales without prescriptions of ''a barbituric acid derivative'' in violation of section 347½ of the Penal Code. Two of those sales—one on the 12th, the other on the 23d, of April—were made at the same time as two of the sales of morphine now before the court.

Section 347½ read at the time as follows:

''It shall be unlawful for any person, . . . to sell, furnish, or give away, . . . any veronal, barbital (acid diethylbarbituric) or other barbituric acid derivative of their salts, derivatives, or compounds of the foregoing substance, or any preparation or compound containing any of the foregoing substances, or their salts, derivatives or compounds, except upon the order or prescription of a physician and surgeon, dentist, chiropodist, or veterinary surgeon. . . .'' The penalty prescribed by this section was a fine not exceeding $200 or imprisonment in the county jail not exceeding six months, or both.

The prosecutions in the municipal court were for the sale of 60 nembutal capsules on April 12th, and of 46 nembutal capsules on April 23d, such sales without a prescription being denounced as a misdemeanor by section 347½. The present prosecutions were for sales of morphine without a prescription, denounced as a felony by section 11160, Health and Safety Code. Hence the appellant was prosecuted under two distinct statutes for selling two different drugs, one defined by law as a ''narcotic,'' the other not so defined.

The answer to appellant's contention is found in the case of *Rodriguez* v. *Superior Court*, 27 Cal.2d 500, 501 [165 P.2d 1], where the court says: ''The test, however, is the identity of the offenses and not the identity of the occurrence from which they arise. A defendant may be convicted of separate offenses arising out of the same transaction when each charge is separately stated and the offenses differ in their elements and one is not included in the other [citations].'' The court therein quotes from *People* v. *Kearney*, 20 Cal.2d 435 [126 P.2d 612], as follows: ''. . . The contention is answered by section 954 of the Penal Code, which provides that where, as here, a defendant is charged with two or more different offenses connected together in their commission, 'A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count' [citations].''

The mere coincidence that both sales were of *drugs* is of no more consequence than the circumstance that both sales might have been rung up on the cash register together. Each sale was a complete offense by itself, and neither offense was, or could have been, included within the other. Certainly proof of the sale of nembutal would not support a conviction under section 11160, nor would proof of a sale of morphine support a conviction under section 347½. The contemporaneous sales of morphine and "a barbituric acid derivative" (both conditionally prohibited) had no more identity or oneness than would have had the contemporaneous sales of morphine and explosives (both likewise prohibited).

The court in deciding this case simply declared that the defendant was "guilty as charged." The appellant contends that the judgment must be reversed because of the failure to find on the plea of former jeopardy, citing *People* v. *Kinsey,* 51 Cal. 278; *People* v. *Helbing,* 59 Cal. 567; *People* v. *Fuque,* 61 Cal. 377; *People* v. *Hamberg,* 84 Cal. 468 [24 P. 298]; *People* v. *Tucker,* 115 Cal. 337 [47 P. 111], and *Ex Parte King,* 10 Cal.App. 282 [101 P. 810], all of which hold that such failure is reversible error. The case of *People* v. *Frank,* 75 Cal.App. 74, 81, 82 [241 P. 924], after citing all six cases, says that "Since the above cases were decided, there have been some decisions . . . which, while not directly overruling these cases, or for that matter even referring to them, appear to enunciate a somewhat different rule. . . . From these later decisions, we question whether the strict rule invoked in the earlier cases above referred to can now be considered the law in this state." In that case the failure to make a separate finding on the jeopardy plea was held not prejudicial. A petition for hearing was denied by the Supreme Court.

In *People* v. *Grace,* 88 Cal.App. 222, 232 [263 P. 306], where, likewise, the Supreme Court denied a hearing, there was a similar holding.

 While, generally speaking, former jeopardy is a question of fact, and hence should be passed on by the jury, in certain circumstances it may become purely a question of law. *People* v. *Ammerman,* 118 Cal. 23 [50 P. 15]; *People* v. *Cummings,* 123 Cal. 269 [55 P. 898]; *People* v. *Newell,* 192 Cal. 659 [221 P. 622]; *People* v. *Wilkison,* 30 Cal.App. 473, 477 [158 P. 1067]; *People* v. *McNeer,* 8 Cal.App.2d 676, 683 [47 P.2d 813].

 In the case at bar the appellant in support of his plea of former jeopardy introduced in evidence the complaints filed

in the municipal court charging the violations of section 347½, and elicited by the cross-examination of the state inspector the fact that the two sales in question (one of morphine, the other of nembutal) were contemporaneous on both occasions. No question of fact was raised, for the nature of the municipal court charges and the fact of the contemporaneous sales of both drugs were uncontradicted. Under the authorities cited, had there been a jury trial it would have been the duty of the judge to direct a verdict against the plea of former jeopardy. As it was there was no jury to instruct, and the court's failure to make a special finding could not possibly have prejudiced the appellant. Such finding would have been a mere formality.

In addition to what has been said, the record shows that when the time came for sentence appellant's counsel stated, "At this time we respectfully move the court to dismiss on all grounds, because none of the facts stated are sufficient to constitute a public offense, and we submit the motion." The motion was denied.

It will be noted that when the opportunity was thus presented for appellant to state whatever grounds he had why sentence should not be pronounced, one of which might have been that the case had not been completely tried because the court had not found on the issue of former jeopardy, the point now urged on appeal was not made. The failure to find, *could then have been readily corrected,* but it was not called to the court's attention. This is an added reason why there should be no reversal on this ground. (See *People* v. *Strickler,* 167 Cal. 627, 628 [140 P. 270].)

█ The appellant's next point is that the conviction cannot be sustained because the commission of each of the offenses charged "was conceived, instigated and solicited by the officers of the State, who played throughout, the role of agents provocateur."

The appellant on cross-examination was asked "What is the standard price, let us say, for a dozen morphine sulphate tablets, one grain?" to which he replied, "I would say two and a half."

The record shows the following: On the first occasion, April 12, appellant sold two 1-grain morphine tablets and 60 capsules of nembutal for $10; on April 16, he sold one 1-grain morphine tablet for $2.50; on April 20, he sold one ½-grain

morphine tablet for $10, and on April 23, he sold two ½-grain morphine tablets and 46 capsules of nembutal for $25.

The record does not show the price at which the nembutal capsules ordinarily sell, or the price which appellant charged for them, so it is not possible to arrive by process of elimination at the price charged for the morphine on the two occasions when both drugs were sold. However, on April 16, (when no nembutal was sold) appellant received $2.50 for *one* 1-grain morphine tablet, when admittedly the price was $2.50 for *a dozen of them*. And on April 20 he received $10 for one ½-grain morphine tablet which was eight times what he had charged four days before, and eight times the standard price for a dozen. On April 23, he received $25 for two ½-grain morphine tablets and 46 nembutal capsules, which was 2½ times what he had charged on April 12 for one-half the quantity of morphine and but 14 more capsules. These facts were before the trial judge, addressed, naturally, to the question whether there was a willing seller as well as a willing buyer.

The morphine tablets were, in each instance, put into a perfectly blank envelope.

A prescription was written out for the cough medicine, as we have seen, and that prescription was filled in the ordinary way. The price for it was $1.35 only. No written prescriptions whatever were made out for the morphine.

The record shows that on the occasion of each sale the conversation between the appellant and the operator lasted for no longer than a minute and a half or two minutes.

It is perfectly true the operator appeared to be in physical pain and distress, and the appellant testified that she pleaded for the morphine. She was sent to a doctor for examination and returned to the drug store with a prescription,—for cough medicine—but received, nevertheless, morphine without any written prescription.

The evidence shows that before the first sale of morphine, on April 12, the operator had made several purchases of nembutal from appellant without a written prescription, and had thus gained his confidence. We need hardly comment on the fact that the confidence thus gained was *built upon sales which were themselves illegal,* under section 347½, Penal Code.

We have recounted only part of the evidence dealing with the alleged entrapment. From what has been said it will readily be seen that there was ample evidence to convince the trial court that the appellant was not lured or led into trouble

without any intent on his part to commit these repeated offenses. (See *People* v. *Makovsky,* 3 Cal.2d 366, 369 [44 P.2d 536]; *In re Wong Poy,* 113 Cal.App. 677 [298 P. 1029]).

██ Lastly the appellant claims that the evidence was insufficient to justify the conviction.

From what has been said it must be clear that there was ample evidence. The making of the last three sales without written prescriptions was not, in fact, denied. "The invocation of the defense [of entrapment, just discussed] necessarily assumes that the act charged as a public offense was committed." (*People* v. *Grijalva,* 48 Cal.App.2d 690, 694 [121 P.2d 32], quoting *People* v. *Lee,* 9 Cal.App.2d 99, 109 [48 P.2d 1003]). Granting that, as appellant testified, the doctor telephoned him to let the operator have the morphine, that, of course, is no defense, for the statute requires, for good and sufficient reasons, a written prescription. The judgment of conviction is amply supported.

For the reasons given in the discussion of former jeopardy the court's failure to find on that issue was not, in view of the entire record in this case, prejudicial error (Const. of Cal., art. VI, § 4½).

The appeal taken from the order denying appellant's motion in arrest of judgment is dismissed. Such an order is not appealable.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied January 14, 1947, and appellant's petition for a hearing by the Supreme Court was denied January 27, 1947.