Filed 3/8/16  P. v. Williams CA1/5
Reposted to provide correct filed date

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD MORRIS WILLIAMS,<br><br>    Defendant and Appellant. | A143202<br><br>(Contra Costa County<br>Super. Ct. No. 05-140960-6) |

Edward Morris Williams appeals from an order of probation imposed after a jury found him guilty of possession of cocaine base and Dihydrocodeinone (Health & Saf. Code, § 11350, subd. (a)).  Morris contends:  (1) this court should examine the sealed record made in connection with his motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), to determine whether the trial court abused its discretion; and (2) the trial court erred in denying his motion for acquittal (Pen. Code, § 1118.1).[1]  We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Williams was charged by information with possession of cocaine base and Dihydrocodeinone (Health & Saf. Code, § 11350, subd. (a); counts one & two respectively).  The information further alleged Williams had a prior felony conviction, which was alleged as an enhancement (§ 667.5, subd. (b)) and later dismissed.

---

[1] Undesignated statutory references are to the Penal Code.

1

*Prosecution's Evidence*

On August 4, 2012, around 6:30 a.m., Contra Costa Sheriff's Deputy William Root responded to a domestic disturbance call in El Sobrante. In connection with that call, Root detained Williams and found a plastic sandwich bag containing loose pills in Williams's back pocket. After Williams was transported to jail, Root discovered that the bag contained another smaller bag. Inside the smaller bag, which had a knot tied in the plastic, Root found 13 yellow pills and 15 pills of a lighter yellow color. He also found eight large, off-white rocks, along with numerous smaller rocks. Root performed a "presumptive" test, which indicated the rocks contained cocaine.

A criminalist with the Contra Costa County Sheriff's Department (Department) tested and analyzed the contents of the bags. She concluded that the off-white rocks were 1.123 grams of cocaine base, which was a usable amount. She also determined both the yellow and off-yellow pills contained Dihydrocodeinone, also known as Hydrocodone, in usable amounts.

*Defense and Rebuttal Evidence*

The defense introduced Williams's medical records, which included a prescription for Norco—a brand name drug containing five milligrams of Hydrocodone bitartrate and 325 milligrams of acetaminophen. In rebuttal, the People's narcotics and pharmacology expert, Walnut Creek Police Detective William Jeha, testified that manufacturers use shape, color, numbering, and lettering to distinguish among different medication strengths. Jeha identified both the yellow and off-yellow pills as Hydrocodone bitartrate, a generic form of Norco, in a dosage of 10 milligrams. The medication was identical, except made by different manufacturers. Williams's prescription did not correspond to the pills found in his possession, as they contained double the prescribed dose of Hydrocodone.

*Verdict and Sentence*

The jury convicted Williams on both counts. Imposition of sentence was suspended, and Williams was ordered to serve a two-year term of probation under Proposition 36 (§ 1210.1). Williams filed a timely notice of appeal.

## II. DISCUSSION

Williams asks us to conduct an independent review of the trial court's in camera proceedings, conducted pursuant to *Pitchess, supra,* 11 Cal.3d 531, to determine whether the trial court abused its discretion by withholding discoverable personnel records. Williams also argues the trial court erroneously denied his motion for acquittal on count two.

### A. *Pitchess Discovery*

Prior to trial, Williams filed a *Pitchess* motion seeking discovery of potential impeachment information from Root's confidential personnel records. (See Evid. Code, § 1043, subd. (a) ["[i]n any case in which discovery or disclosure is sought of peace . . . officer personnel records or records maintained pursuant to Section 832.5 . . . or information from those records, the party seeking the discovery or disclosure shall file a written motion with the appropriate court"].) The motion was supported with a declaration from Williams's trial counsel who declared, on information and belief, that Root falsified portions of his police report. The trial court found that Williams had made the minimal showing required for an in-chambers review of records. After an in camera review of the material produced by the Department's custodian of records, the trial court stated: "I conducted a page-by-page review of all of the official records and the personnel records, which were brought here . . . . And as to those documents, I have reviewed them all, and there is nothing in those records which touches in any manner on the question of credibility, fabrication of evidence or the like. . . . [T]he Court found nothing, of relevance in the records, . . . which is discoverable."

Williams asks us to independently review the trial court's in camera *Pitchess* proceedings to determine whether the trial court abused its discretion by withholding discoverable personnel records. On appeal, the reviewing court ordinarily should "itself [review] those documents (or [augment] the record to include those documents) and [determine] whether the trial court . . . abused its discretion in refusing to disclose any of [the officer's] records." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228 (*Mooc*).)

It is the trial court's responsibility, in order to permit appellate review, to "make a record of what documents it examined before ruling on the *Pitchess* motion. . . . If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court can prepare a list of the documents it considered, *or simply state for the record what documents it examined.* Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision, whether to disclose or not to disclose, would be nonexistent." (*Mooc, supra*, 26 Cal.4th at p. 1229, italics added.) Accordingly, if the court fails to prepare an adequate record, the matter should be remanded to the trial court with directions to hold a hearing to augment the record with the evidence it considered in chambers when it ruled on the *Pitchess* motion. (*Mooc*, at p. 1231; *People v. Gaines* (2009) 46 Cal.4th 172, 180–181.)

Contrary to the People's assertion that Williams failed to furnish a sufficient record on appeal, Williams's appellate counsel properly attempted to augment the record with the sealed transcript of the in camera *Pitchess* hearing and the documents reviewed by the trial court at that hearing. We received the sealed transcript from the trial court's in camera review, but the clerk of the Contra Costa County Superior Court indicated that no further *Pitchess* material was in the superior court file. Our effort to obtain a copy of the records, or any log of such records, from the Department was unsuccessful.

We have only the sealed transcript of the trial court's in camera review, in which the court "state[d] for the record what documents it examined." (*Mooc, supra*, 26 Cal.4th at p. 1229.) However, when the confidential personnel files themselves are subsequently unavailable, the appellate court may conduct an adequate review by considering only the sealed transcript. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *People v. Prince* (2007) 40 Cal.4th 1179, 1285–1286; *People v. Jackson* (1996) 13 Cal.4th 1164, 1221, fn. 10; *Mooc, supra,* 26 Cal.4th at p. 1229.) Having independently reviewed the sealed transcript, we conclude that the trial court did not abuse its discretion in refusing to disclose any records from Root's personnel file.

4

B.   *Motion for Acquittal*

Next, Williams contends that the trial court erred by denying his motion for acquittal. We disagree. At the conclusion of the defense case, Williams moved for an acquittal on count two, under section 1118.1. Williams argued: "At that point, what was in evidence was the People's testimony, which didn't include anything about the strength of Hydrocodone or Dihydrocodeinone. After the conclusion of defense's case, there was a prescription for Hydrocodone, which previous testimony indicated contains Dihydrocodeinone. . . . [B]ased on the state of evidence at that point, a reasonable juror would not be able to find [Williams] guilty of possessing Dihydrocodeinone." The trial court denied the motion, allowed the People to attempt to rebut Williams's prescription defense and instructed the jury, pursuant to CALCRIM No. 2304, that the People had the burden of proving beyond a reasonable doubt that Williams did not have a valid written prescription for the Dihydrocodeinone found in his back pocket.

"In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right." (§ 1118.1.)

"In ruling on a motion for judgment of acquittal pursuant to section 1118.1, a trial court applies the same standard an appellate court applies in reviewing the sufficiency of the evidence to support a conviction . . . ." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212–1213.) " ' "[W]e do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier

5

could reasonably deduce from the evidence.  [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . [Citation.]  '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.'  [Citation.]  We do not reweigh evidence or reevaluate a witness's credibility." '  [Citations.]  Notably, however, '[r]eview of the denial of a section 1118.1 motion made at the close of a prosecutor's case-in-chief focuses on the state of the evidence as it stood at that point.' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1182–1183.)  On appeal, "[w]e review independently a trial court's ruling under section 1118.1 that the evidence is sufficient to support a conviction." (*Cole,* at p. 1213.)

Williams contends:  "At the close of the prosecutor's case-in-chief and after the defense introduced its only evidence—[Williams's] prescription . . . —there was no evidence to support [count two], since it is not illegal to possess a controlled substance for which there is a prescription."

Although Health and Safety Code section 11350, subdivision (a), is silent on the question of which party bears the burden of proof on a prescription defense, the case law is clear that, under the rule of convenience and necessity, the defendant has the burden. (*Ibid.* ["every person who possesses . . . any controlled substance . . . , unless upon the written prescription of a physician . . . licensed to practice in this state, shall be punished by imprisonment"]; *People v. Mower* (2002) 28 Cal.4th 457, 477; *People v. Marschalk* (1962) 206 Cal.App.2d 346, 349 ["the privilege of possessing a narcotic must be shown affirmatively by the defendant"]; *People v. Martinez* (1953) 117 Cal.App.2d 701, 708 ["when a license or prescription would be a complete defense, the burden is upon the accused to prove that fact"]; *People v. Bill* (1934) 140 Cal.App. 389, 392–393.) However, because the defense relates to the elements of the charged offense, Williams burden was only a burden of production—he merely had to raise a reasonable doubt as to his guilt.  (*Mower,* at pp. 479–480.)

6

" 'The purpose of a motion under section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie' " case during its case-in-chief. (*People v. Stevens* (2007) 41 Cal.4th 182, 200.) Williams provides no authority for his implicit proposition that, having presented such a prima facie case, the People were barred from presenting rebuttal evidence after the defense introduced evidence of his prescription. Even if this were the case, viewing the record in the light most favorable to the judgment, we conclude there is substantial evidence from which a rational jury could find Williams possessed the Dihydrocodeinone without a valid written prescription. The People showed that Williams possessed Dihydrocodeinone, not in a prescription pill bottle, but in a clear, plastic baggie, with a knot tied in the plastic, in his back pocket. The bag containing the Dihydrocodeinone pills was also held by Williams inside a second baggie containing cocaine base. Even without Jeha's testimony, the manner of Williams's possession of the Dihydrocodeinone supports a finding that he did not have a valid written prescription. The trial court did not err in denying the motion for acquittal.

### III.   DISPOSITION

The judgment is affirmed.


_____
BRUINIERS, J.


WE CONCUR:


_____
SIMONS, Acting P. J.


_____
NEEDHAM, J.