SHAW, P. J.
 

 The charge here is that defendant, in violation of section 2141 of the Business and Professions Code, practiced “a system and mode of treating the sick and afflicted”, and “diagnosed, treated, operated for and prescribed for an ailment, blemish, deformity, disease, disfigurement, dis
 
 *Supp. 740
 
 order, injury and other mental and physical condition” of a named person, without having a valid, unrevoked certificate authorizing him to do so, issued by the board of medical examiners or the board of osteopathic examiners. At the trial it was stipulated that at the times referred to in the complaint defendant was a chiropractor duly licensed to practice under the Chiropractic Act hereinafter mentioned and that he was not otherwise licensed to practice medicine, surgery or osteopathy. In his defense he contended that what he did was authorized by his chiropractic license.
 

 Section 2141 of the Business and Professions Code, on which the complaint is based, reads as follows: “Any person, who practices or attempts to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this State, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other mental or physical condition of any person, without having at the time of so doing a valid, unrevoked certificate as provided in this chapter, is guilty of a misdemeanor.” By other provisions of the chapter of this code in which section 2141 is found (secs. 2005, 2135), the certificate referred to in that section may, according to the circumstances of the case, be issued either by the board of medical examiners provided for in the code or by the board of osteopathic examiners set up and governed by another statute. These provisions made it necessary for the complaint to negative (as it did) the possession by defendant of a certificate from either board. No corresponding provision is made by the code regarding the board of chiropractic examiners, hereinafter referred to.
 

 So far the language of the Business and Professions Code alone is concerned, the complaint here is obviously sufficient to charge a violation thereof. But appellant contends that by reason of certain provisions of a separate and independent enactment known as the Chiropractic Act (enacted in 1922 as an initiative measure; Stats. 1923, p. lxxxviii, Peering’s Gen. Laws, 1937 ed., Act 4811) the complaint must, in order to charge a public offense, negative the possession by the defendant of a license issued under that act by the board of chiropractic examiners, or else allege that the acts done were not such as could lawfully be done under such a license. A complaint identical, for present purposes, with this one was
 
 *Supp. 741
 
 treated by this court as sufficient to charge a public offense in
 
 People
 
 v.
 
 Schuster,
 
 (1932) 122 Cal. App. (Supp.) 790, 794 [10 Pac. (2d) 204] ; but since the point now made was not raised or considered in that ease, it is not to be regarded as a direct authority here. On further consideration we are satisfied that the complaint here is sufficient.
 

 While the Business and Professions Code was enacted in 1937 (Stats. 1937, p. 1230 et seq.), it is but a codification, with little change, of previously existing statutes which were in terms repealed by it, including a former act known as the “State Medical Practice Act” (Deering’s Gen. Laws, 1931 ed., Act 4807). Section 17 of that act as amended in 1917 (Stats. 1917, p. 114) was in force when the Chiropractic Act was adopted, and it then contained language substantially the same as that of section 2141 of the Business and Professions Code, but the certificate referred to in section 17 could be issued, according to other provisions of the act, by the board of medical examiners only. That language was carried into all subsequent amendments of said section 17 and remained in force as a part of it when the above-mentioned code was enacted. Section 2 of the Business and Professions Code provides that its provisions “in so far as they are substantially the same as existing statutory provisions relating to the same subject matter shall be construed as restatements and continuations thereof, and not ás new enactments.” The same rule applies to all amending statutes. (See Pol. Code, sec. 325;
 
 Corporation of America
 
 v.
 
 Johnson,
 
 (1936) 7 Cal. (2d) 295, 305, 306 [60 Pac. (2d) 417].) In view of these rules relating to the construction of codifying and amending statutes, the substantial question presented now for decision on the sufficiency of the complaint is in nowise different from what it would have been had it arisen immediately after the adoption of the Chiropractic Act.
 

 Taking the matter up as it presented itself at that time, we find a statute (the Medical Practice Act) declaring it a misdemeanor for any person to practice a system or mode of treating the sick or afflicted, etc., without a certificate from the state board of medical examiners, and a separate, distinct and subsequent statute (the Chiropractic Act), providing (in terms to be discussed later) that a license authorizing the holder to practice the particular mode of treatment therein described and in part designated as chiropractic may be is
 
 *Supp. 742
 
 sued by the board of chiropractic examiners therein provided for. This latter statute by implication and by the terms of section 18 thereof repealed the provisions of the Medical Practice Act so far as the latter might conflict with the provisions of the Chiropractic Act as applied to licensed chiropractors. (Pe
 
 ople
 
 v.
 
 Schuster, supra,
 
 (1932) 122 Cal. App. (Supp.) 790, 794.)
 

 No doubt the possession of a license under the Chiropractic Act by a defendant who is charged with violating the provision of the Medical Practice Act (or Business and Professions Code) here involved affords him a complete defense, so long as he has not exceeded the authority of that license, but it does not follow that the complaint under the Medical Practice Act (or the code) must negative his possession of such a license. The lack of such a license is not stated by the last-mentioned act (or the code) as a part of the definition of the offense there denounced. The question of such a license enters into the case only by reason of the separate Chiropractic Act. No part of the language of the Medical Practice Act was expressly repealed, or removed or deleted from that act by the Chiropractic Act. The language on which the complaint herein is founded still remained in the Medical Practice Act after the enactment of the Chiropractic Act, and it is now in the code. The operative effect of the Chiropractic Act is the same as that of an exception or limiting proviso placed in the same act with a prohibition but not made a part of the definition of the offense. It is the rule in such matters that it is not necessary in a criminal charge to negative an exception or proviso which is not a part of the definition or description of the offense. (31 Cor. Jur. 720-725; 14 Cal. Jur. 52, 53;
 
 People
 
 v.
 
 H, Jevne Co.,
 
 (1919) 179 Cal. 621, 625, 626 [178 Pac. 517];
 
 Ex parte Hornef,
 
 (1908) 154 Cal. 355, 360 [97 Pac. 891];
 
 People
 
 v.
 
 Kinsley,
 
 (1931) 118 Cal. App. 593, 598 [5 Pac. (2d) 938].) Of every complaint which does not negative such a proviso or exception, it is possible to say that all the facts alleged in it may be true and still the defendant may be entirely innocent of crime. But such complaints are, nevertheless, held sufficient by the authorities just referred to and many others which could be cited. The court in
 
 Ex parte Hornef, supra,
 
 (1908) 154 Cal. 355, 362, declared the rule as follows: “At most the proviso is a statement of an exception which
 
 *Supp. 743
 
 in no degree qualifies the offense created by the statute, but simply exempts certain persons from the operation of such statute. As such, it was available to petitioner in defense of the charge made against him in the police court, if he came within its provisions, but it was not necessary that the complaint should allege that he was not within its terms.” All of this is equally true of the effect of the Chiropractic Act on the Medical Practice Act and the Business and Professions Code.
 

 The rule above mentioned regarding the necessity of negativing an exception or proviso has been applied in cases where the effect of a subsequent or other separate statute was in question. As long ago as 1786, when the rules of criminal pleading were certainly no more liberal than they are now, the English Court of King’s Bench held that “if a subsequent statute make an exception to a former one, it is incumbent on the defendant to shew, by way of defense, that he comes within such exception.”
 
 (The King
 
 v.
 
 Hall,
 
 (1786) 1 T. R. 320, 322.) The same holding has been made in American cases.
 
 (Duncan
 
 v.
 
 State,
 
 (1919) 16 Okl. Cr. 175 [181 Pac. 736, 737];
 
 Nolan
 
 v.
 
 State,
 
 (1929) 157 Md. 332 [146 Atl. 268, 270];
 
 People
 
 v.
 
 Lewis,
 
 (1924) 227 Mich. 343 [198 N. W. 957, 958];
 
 Ash
 
 v.
 
 State,
 
 (1938) 134 Tex. Crim. 208 [114 S. W. (2d) 889, 890];
 
 Colson
 
 v.
 
 State,
 
 (1845) 7 Blackf. (Ind.) 590;
 
 United States
 
 v.
 
 Moore,
 
 (1882) 11 Fed. 248, 252;
 
 United States
 
 v.
 
 Cook,
 
 (1872) 17 Wall. 168, 173-178 [21 L. Ed. 538, 539, 540]), where there is an extensive and able discussion of this subject and the rule was applied to a separate statute which was apparently prior rather than subsequent. The same rule has been declared in numerous eases where it was not directly involved.
 
 (No-Worry Chemical Co.
 
 v.
 
 Du-All Chemical Co.,
 
 (1938) 16 N. J. Misc. 99 [197 Atl. 364, 355];
 
 People
 
 v.
 
 Willi,
 
 (1919) 109 Misc. 79 [179 N. Y. Supp. 542, 545];
 
 Mayer
 
 v.
 
 State,
 
 (1900) 64 N. J. L. 323 [45 Atl. 624];
 
 People
 
 v.
 
 Phippin,
 
 (1888) 70 Mich. 6, 11 [37 N. W. 888];
 
 State
 
 v.
 
 Elam,
 
 (1886) 21 Mo. App. 290, 292;
 
 Jalbert
 
 v.
 
 State,
 
 (1928) 200 Ind. 380 [165 N. E. 522, 523];
 
 State
 
 v.
 
 Smith,
 
 (1911) 233 Mo. 242 [135 S. W. 465, 33 L. R. A. (N. S.) 179, 182].)
 

 Defendant presents a number of contentions regarding instructions as to the scope and extent of the practice permitted to a chiropractor, which require a consideration and interpretation of section 7 of the Chiropractic Act. That section
 
 *Supp. 744
 
 reads as follows: “One form of certificate shall be issued by the board of chiropractic examiners, which said certificate shall be designated ‘License to practice chiropractic’, which license shall authorize the holder thereof to practice chiropractic in the state of California as taught in chiropractic schools or colleges; and, also, to use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body, but shall not authorize the practice of medicine, surgery, osteopathy, dentistry or optometry, nor the use of any drug or medicine now or hereafter included in
 
 materia
 
 medica. ” At the time this act was adopted there was in force the Medical Practice Act already mentioned, which undertook to regulate the practice of all systems or modes of healing the sick, section 17 thereof making it unlawful to practice any of them without a certificate which could be obtained, under that act, only from the board of medical examiners, and section 8 thereof authorizing that board to issue four forms of certificates, designated as “physician and surgeon certificate”, “drugless practitioner’s certificate”, certificate to practice chiropody, and certificate to practice midwifery. By the terms of section 8, as amended by Statutes 1921, page 995, and in force in 1922, a “physician and surgeon certificate” authorized the holder “to use drugs or what are known as medical preparations in or upon human beings and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities or other physical or mental conditions”, while the “drugless practitioner’s certificate” authorized the holder “to treat diseases, injuries, deformities or other physical or mental conditions without the use of drugs or what are known as medical preparations and without in any manner severing or penetrating any of the tissues of human beings except the severing of the umbilical cord”.
 

 In view of the meaning of the term ‘ ‘ chiropractic ’ ’ as stated below, it would come within the scope of this drugless practitioner’s certificate. Examination of the argument in favor of the Chiropractic Act, made by those advocating it and officially circulated to the voters at the election in 1922 at which the act was submitted and adopted as an initiative measure, shows that the principal matter complained of was unfair administration of the Medical Practice Act against chiropractors by the board in charge. No objection was made
 
 *Supp. 745
 
 to the terms of that act itself, or the scope of the practice permitted by it to drugless practitioners, and the voters were assured by this argument that the proposed Chiropractic Act “prohibits the use of drugs, surgery or the practice of obstetrics by chiropractors”. This argument, while not conclusive, may be considered as an aid in the interpretation of the statute.
 
 (Beneficial Loan Soc., Ltd.,
 
 v.
 
 Haight,
 
 (1932) 215 Cal. 506, 515 [11 Pac. (2d) 857].)
 

 Section 7 is the only provision of the Chiropractic Act which undertakes either to define or describe chiropractic or to declare what is authorized by a license issued under the act. The authorization is in two parts, 1st, “to practice chiropractic ... as taught in chiropractic schools or colleges”, and 2d, “to use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body”.
 

 Taking up the first part of this authorization, appellant ■ contends that it authorizes the practice by a licensed chiropractor of ‘1 anything that he is taught in chiropractic schools and colleges”, citing
 
 Evans
 
 v.
 
 McGranaghan,
 
 (1935) 4 Cal. App. (2d) 202 [41 Pac. (2d) 937]. This is too broad an interpretation of the provision. It contains two expressions, each of which has a limiting, as well as an authorizing, effect. The practice authorized must be “chiropractic”, and it must also be “as taught in chiropractic schools or colleges”. Neither of these expressions can rule the meaning of the statute, to the exclusion of the other. Considering the first of them, the word “chiropractic” had, when this law was passed in 1922, a well-established and quite definite meaning. In the Standard Dictionary, 1913 edition, it was defined as “A drugless method of treating disease chiefly by manipulation of the spinal column”. Other equivalent definitions taken from dictionaries and encyclopedias appear in the decisions quoted below. In volume 11 of Corpus Juris, which was published in 1917, the following definition is given for “chiropraetics”: “A system of healing that treats disease by manipulation of the spinal column; the specific science that removes pressure on the nerves by the adjustment of the spinal vertebrae. There are no instruments used, the treatment being by hand only”; in support of which Webster’s Dictionary is cited, also several court decisions. In
 
 State
 
 v.
 
 Barnes,
 
 (1922) 119 S. C. 213 [112 S. E. 62, 63], the court
 
 *Supp. 746
 
 said: “Chiropractiee has been defined, and is commonly understood, as a system of treatment by manipulation of anatomical displacements, especially the articulation of the spinal column, including its vertebrae and cord.” In
 
 State
 
 v.
 
 Hopkins,
 
 (1917) 54 Mont. 52 [166 Pac. 304, 306, Ann. Cas. 1918D, 956], the court quoted from Webster’s New Standard Dictionary this definition of “Chiropractic”: “A system of [or] the practice of adjusting the joints, especially of the spine, by hand for the curing of disease.” In
 
 Commonwealth
 
 v.
 
 Zimmerman,
 
 (1915) 221 Mass. 184 [108 N. E. 893, 894, Ann. Cas. 1916A, 858], the court quoted from Webster’s International Dictionary a definition of “chiropractic” as follows : “A system of healing that treats disease by manipulation of the spinal column. ’ ’ The same definition was cited in
 
 State
 
 v.
 
 Gallagher,
 
 (1911) 101 Ark. 593 [143 S. W. 98, 38 L. R. A. (N. S.) 328, 330], and
 
 State
 
 v.
 
 Johnson,
 
 (1911) 84 Kan. 411 [114 Pac. 390, 41 L. R. A. (N. S.) 539, 541]. In
 
 Board of Medical Examiners
 
 v.
 
 Freenor,
 
 (1916) 47 Utah, 430 [154 Pac. 941, 942, Ann. Cas. 1917E, 1156], the court quoted definitions of “chiropractic” as follows: “A system of therapeutic treatment for various diseases, through the adjusting of articulations of the human body, particularly those of the spine, with the object of relieving pressure or tension upon nerve filaments. The operations are performed with the hands, no drugs being administered.” (taken from Nelson’s Encyclopedia), and “A system of manipulations which aims to cure disease by the mechanical restoration of displaced or subluxated bones, especially the vertebrae, to their normal relation”, (from International Encyclopedia).
 

 This general consensus of definitions, current at and before the time the Chiropractic Act was adopted, shows what was meant by the term “chiropractic” when used in that act. “The words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted.” (25 R. C. L. 959;
 
 Werner
 
 v.
 
 Hillman etc. Co.,
 
 (1930) 300 Pa. 256 [150 Atl. 471, 70 A. L. R. 967, 970];
 
 Dunn
 
 v.
 
 Commissioner,
 
 (1933) 281 Mass. 376 [183 N. E. 889, 87 A. L. R. 998, 1002]; see, also,
 
 Lowder
 
 v.
 
 Union Tr. Co.,
 
 (1926) 79 Cal. App. 598 [250 Pac. 703].). Nor has the accepted meaning of “chiropractic” since changed, for in the latest (1938) edition of Webster’s New International Dictionary we find the same definition quoted in
 
 State
 
 v.
 
 Hopkins,
 
 
 *Supp. 747
 

 supra,
 
 (1917) 54 Mont. 52 [116 Pac. 304, 306, Ann. Cas. 1918D, 956]. Words of common use, when found in a statute, are to be taken in their ordinary and general sense.
 
 (Corbett
 
 v.
 
 State Board of Control,
 
 (1922) 188 Cal. 289, 291 [204 Pac. 823];
 
 In re Alpine,
 
 (1928) 203 Cal. 731, 737 [265 Pac. 947, 58 A. L. R. 1500];
 
 Bagg
 
 v.
 
 Wickizer,
 
 (1935) 9 Cal. App. (2d) 753, 758 [50 Pac. (2d) 1047].)
 

 The effect of the words “as taught in chiropractic schools or colleges” is not to set at large the signification of “chiropractic”, leaving the schools and colleges to fix upon it any meaning they choose. Were the word “chiropractic” of unknown, ambiguous or doubtful meaning, this clause, “as taught” etc., might serve to provide a means of defining or fixing its signification, but there is here no such lack of clarity. The scope of chiropractic being well known, the schools and colleges, so far as the authorization of the chiropractor’s license is concerned, must stay within its boundaries; they cannot exceed or enlarge them. The matter left to them is merely the ascertainment and selection of such among the possible modes of doing what is comprehended within that term as may seem to them best and most desirable, and so the fixing of the standards of action in that respect to be followed by chiropractic licensees. Such we understand to be the effect of the holding in
 
 In re Hartman,
 
 (1935) 10 Cal. App. (2d) 213, 217 [51 Pac. (2d) 1104].
 
 Evans
 
 v.
 
 McGranaghan, supra,
 
 4 Cal. App. (2d) 202, is not clearly to the contrary, but if it can be so regarded we prefer to follow the later Hartman case. If our opinion in
 
 People
 
 v.
 
 Schuster,
 
 (1932) 122 Cal. App. (Supp.) 790, 795 [10 Pac. (2d) 204], is thought to go farther than this, we now qualify it in that respect, deeming the rule just stated to be the proper one. The court’s instruction defining “chiropractic” in the words already quoted from Webster’s New Standard Dictionary was correct.
 

 The second part of the authorization contained in section 7 of the act, “to use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body”, is not a definition of, but an addition to, chiropractic as used in the previous part of section 7 and authorizes chiropractors to use measures which would not otherwise be within the scope of their licenses. The trial court, after giving the above-mentioned definition of chiropractic to the jury, gave
 
 *Supp. 748
 
 them an instruction substantially in the language of section 7. This sufficiently informed the jury that the defendant was not limited to chiropractic as defined, but might use the other measures described.
 

 This instruction told the jury that defendant’s chiropractic license “did not authorize the practice of medicine or surgery, nor the use of any drug or medicine now or hereafter included in
 
 materia
 
 medica' ’. The court also gave this instruction, following those already mentioned: “It is thus seen that the authority granted to a chiropractor to practice the arts taught in chiropractic schools and colleges is limited by the restriction that such practice may not invade the field of medicine or surgery, nor may the chiropractor use any drug or medicine included in
 
 materia medica,
 
 even though certain phases of the practice of medicine or surgery or the use of such drugs or medicines may have been taught in chiropractic schools or colleges. In other words, the chiropractor is limited to the practice of chiropractic and the use of mechanical, hygienic and sanitary measures incident to the care of the body, which do not invade the field of medicine and surgery, irrespective of whether or not additional phases of the healing art, including medicine and surgery or the use of drugs, may have been taught in chiropractic schools or colleges. ’ ’
 

 Defendant strenuously objects to the instructions last mentioned, contending that the limiting language “but shall not authorize the practice of medicine, surgery, osteopathy, dentistry or optometry, nor the use of any drug or medicine now or hereafter included in
 
 materia medica”,
 
 contained in section 7, “is purely surplusage and should be wholly disregarded in interpreting the section”, but confining his argument in this respect to the limitation against medicine and surgery. This was certainly not the position taken by the writer of the above-mentioned argument addressed to the voters; nor did the people have any such intent in adopting the act, if they paid any attention to the positive assurance given them by that argument, as we must suppose they did. The first reason advanced by appellant for this contention is that chiropractic is merely a phase of medicine and surgery, and since the license expressly permits it, the limitation is repugnant to the grant and must be ignored. It is true that chiropractic was within the terms of the Medical Practice
 
 *Supp. 749
 
 Act as it stood when the Chiropractic Act was adopted and could not lawfully be practiced without a certificate under that act; but that act, as already stated, extended farther than a mere regulation of the practice of medicine and surgery. However, there are decisions holding that chiropractic is within the field of medicine and surgery and its practice without a license is in violation of statutes regulating those matters which do not in terms extend beyond medicine and surgery. See
 
 Commonwealth
 
 v.
 
 Zimmerman, supra,
 
 (1915) 221 Mass. 184 [108 N. E. 893, 894, Ann. Cas. 1916A, 858];
 
 State
 
 v.
 
 Barnes, supra,
 
 (1922) 119 S. C. 213 [112 S. E. 62, 63];
 
 State
 
 v.
 
 Smith,
 
 (1911) 233 Mo. 242 [135 S. W. 465, 33 L. R. A. (N. S.) 179, 185];
 
 Long
 
 v.
 
 Metzger,
 
 (1930) 301 Pa. 449 [152 Atl. 572];
 
 Commonwealth
 
 v.
 
 Byrd,
 
 (1916) 64 Pa. Super. 108. Assuming that these cases correctly state the scope of the terms “medicine” and “surgery”, when used in their most general sense, it does not follow that defendant’s contention is established. In construing a statute, all the parts of it must be considered together, and meaning and effect must be given, if possible, to each and every part thereof. (23 Cal. Jur. 758-761.) This statute must, then, mean something by its provision, hereinafter referred to as the proviso, that a chiropractic license shall not authorize the practice of medicine or surgery, etc. Of course, it does not mean to prohibit what has just been expressly authorized, that is, the practice of chiropractic. Chiropractic, as above defined, would not be within the terms “medicine” and “surgery” unless they are used in their broadest and most general sense as including all the healing arts. In order to give effect to the whole statute, we must conclude that they are not so used here. The author of the above-mentioned argument to voters evidently did not think that these terms were used in their broadest sense in the act, for he declared that “The teachings and practice of chiropractic are admittedly different from those of medicine”. Seeking a inore restricted meaning for the terms mentioned, and noting that the advocates of the Chiropractic Act stated in the argument to voters above mentioned no objection to the scope of the license which a chiropractor could obtain under the Medical Practice Act, but on the contrary declared that under the proposed act chiropractors could not use drugs or surgery, we conclude that the words “medicine”, and “surgery”, as used in section 7
 
 *Supp. 750
 
 of the Chiropractic Act, were intended to continue as to chiropractors the limitations imposed on drugless practitioners by the Medical Practice Act, that is, to deny them the use of drugs and medical preparations and the severing or penetrating of the tissues of human beings. This accords with a quite common use of the two words in ordinary conversation. (The exception to this limitation in the Medical Practice Act, that is, severing the umbilical cord, is disclaimed by the argument in favor of the Chiropractic Act, but we need not now decide whether the disclaimer was necessary.) So limited in meaning, the proviso may, as far as the term “chiropractic” is concerned, have been unnecessary and inserted merely out of abundance of caution, or to afford an obvious foundation for the argument submitted to the voters. But the other “measures” mentioned in section 7 are described in such general terms that they might well include many things which would be a part of medicine or surgery in the stricter sense or would otherwise be within the proviso. As to such measures, the proviso has an apparent office to perform; it prevents the chiropractor from resorting to them by authority of his license as such, or, as the trial court put it, he cannot “invade the field of medicine and surgery”. Neither as to the described “measures” authorized by section 7, nor as to the limitations upon them by the proviso, does the statute confer any selective function upon chiropractic schools or colleges. They cannot, by teaching any measures which are properly a part of the practice of medicine or otherwise banned by the proviso, prevent them from being such, or authorize chiropractors to make use of them.
 

 Defendant further attempts to apply here the rule that when general and particular provisions of a statute are inconsistent, the latter will prevail over the former. This rule is undoubted, but defendant undertakes to put the shoe of particularity on the wrong foot. He envisions the proviso as the general provision and the authority to practice chiropractic and use other measures as the particular. To us the situation appears just the reverse. The framers of the statute were undertaking by the proviso to subtract something from the authorization previously made and limit its generality. The instructions complained of were correct.
 

 Appellant also complains of the following instruction: “You are instructed that a license to practice chiropractic
 
 *Supp. 751
 
 does not authorize the holder thereof to use any drug or medicine included in
 
 materia medica,
 
 and that the fact that such drug or medicine may be included in and used in the preparation of a proprietary medicine which is not listed by its trade name in
 
 materia medica,
 
 does not authorize the use of such proprietary medicine by the chiropractor. In other words, the use of drugs or medicine listed in
 
 materia medica,
 
 is prohibited, whether the same are used separately or included as a constituent part in a compound or so-called proprietary medicine.” The objection is that it excludes chiropractors from the use of proprietary medicines. But this is in accordance with the language of the statute itself, which makes no exception of medicines that are “proprietary”. The statute declares that persons licensed under it shall not practice medicine, a practice which certainly includes the use and prescribing of medicines in whatever form or combination they may be prepared or sold. It also prohibits the use by licensees of “any drug or medicine now or hereafter included in
 
 materia
 
 medica”. The term
 
 “materia medica”
 
 is defined in Webster’s New International Dictionary, 1926 ed., as follows: “1. Material or substance used in the composition of remedies;—a general term for all substances used as curative agents in medicine. 2. That branch of medical science which treats of the nature and properties of all the substances employed for the cure of diseases; one of the two branches of pharmacology.” The Century Dictionary, 1911 ed., and the Standard Dictionary, 1913 ed., contain substantially the same definitions of the term. For the present purpose it makes little difference which of these two meanings is to be given the term in section 7 of the Chiropractic Act; but the nature and context of that provision suggest that the second of them is the one intended. Taking it in either sense, the effect of the proviso cannot be evaded by mixing one of the included drugs or medicines with something else and calling it, whether rightly or wrongly, a proprietary medicine.
 

 The appellant has not attacked the sufficiency of the evidence to support the conviction; in fact, he has not placed in his statement on appeal any specification of particulars in which the evidence is insufficient, without which, under the Judicial Council rules regulating appeals to this court, that question cannot be considered by us as a ground of appeal.
 
 *Supp. 752
 
 However, in considering the instructions, we have read the evidence which is in the record and find in it ample support for the verdict finding defendant guilty of the charge.
 

 The judgment is affirmed. The appeal from the order denying the motion for a new trial is dismissed.
 

 Bishop, J., concurred.