Joseph AMBROSE, D.C., Plaintiff,

v.

Gary COFFEY, et al., Defendants.

No. CIV. S–08–1664 LKK/GGH.

United States District Court,
E.D. California.

Dec. 24, 2009.

Daniel A. Horowitz, Law Office of Daniel Horowitz, Lafayette, CA, Martin L. Jaspovice, Richard Jay Simons, Furtado, Jaspovice & Simons, Hayward, CA, Robert Tucker Waters, Drivon Turner & Waters, Professional Law Corporation, for Plaintiff.

Dennis B. Kass, Evelina Maria Serafini, Manning & Marder, Kass, Ellrod, Ramirez, LLP, Los Angeles, CA, Brian J. Finn, Manning & Marder, San Francisco, CA, Dana A. Suntag, Suntag & Feuerstein, A Professional Corporation, Stockton, CA, for Defendants.

## *ORDER*

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiffs bring suits arising out of an investigation of them, their arrests, and their criminal prosecution. Below, the court disposes of various motions to dismiss.

## I. BACKGROUND

### A. Procedural Posture

On July 18, 2008, plaintiff Joseph Ambrose ("Ambrose") filed a complaint against Gary Coffey ("Coffey"), James C. Weydert ("Weydert"), William Reynolds ("Reynolds"), Travelers Property and Casualty Company of America ("Travelers"), Zenith Insurance Company ("Zenith"), and the County of San Joaquin ("County"). On August 20, 2008, Travelers and Reynolds moved to dismiss all causes of action pled against them, and on August 28, 2008, the County, Coffey, and Weydert also moved to dismiss all claims against them. Ambrose voluntarily dismissed Zenith on September 4, 2008. On November 13, 2008, the court granted defendants' motions to dismiss Ambrose's complaint in part, and granted Ambrose leave to amend his complaint. Ambrose filed an amended complaint on September 18, 2009.

On May 28, 2009, plaintiffs Richard Sausedo ("Sausedo") and Pedram Vaezi ("Vaezi") filed a complaint against Travelers, Reynolds, County, Weydert, and Coffey, *Sausedo v. Travelers Prop. & Cas. Co.*, 2:09–cv–01477–LKK–GGH, arising out of the same facts. Plaintiffs concurrently filed a notice of related cases to *Ambrose v. Coffey*, 2:09–cv–01664–LKK–GGH. On June 16, 2009, the court consolidated *Ambrose* and *Sausedo*.

On July 27, 2009, plaintiff Michael Yates ("Yates") filed a virtually identical complaint as *Sausedo* against the same defendants, *Yates v. Travelers Prop. & Cas. Co.*, 2:09–cv–02062–LKK–GGH. Yates filed a notice of related cases with his complaint to *Ambrose* and *Sausedo*. On August 3, 2009, the court ordered the cases related, and on September 2, 2009, the court consolidated *Yates* with *Ambrose* and *Sausedo*. On October 5, 2009, defendants County, Coffey, and Weydert ("moving defendants") moved to dismiss Yates's and Sausedo and Vaezi's complaints.

Plaintiffs filed an opposition to the motion on November 6, 2009.

On September 21, 2009, plaintiff Wilmer D. Origel ("Origel") filed a complaint virtually identical to those of *Sausedo* and *Yates, Origel v. Travlers Prop. & Cas. Co*, 2:09–02640–LKK–GGH. On October 2, 2009, Origel filed a notice of related cases with *Ambrose, Sausedo*, and *Yates*. On October 30, 2009, the court ordered *Origel* related to *Ambrose, Sausedo*, and *Yates*. The court has not consolidated *Origel* with the other three cases. On October 15, 2009, the moving defendants filed a motion to dismiss Origel's complaint. Origel filed an opposition on November 6, 2009. Both the motion and the opposition filed in *Origel* are virtually identical to those filed in *Sausedo* and *Yates*. For these reasons this order will address all the motions together.

### B. Factual Allegations

#### 1. Plaintiffs' Chiropractic Practice

Sausedo, Vaezi, Yates, and Origel ("plaintiffs") were all licensed as chiropractors under California law, and practiced in California prior to their arrests in 2005. Sausedo Complaint ("SC") ¶ 2; Yates Complaint ("YC") ¶ 2; Origel Complaint ("OC") ¶ 2. Plaintiffs performed a chiropractic procedure called Manipulation Under Anesthesia ("MUA"). SC ¶ 7; YC ¶ 7; OC ¶ 7. This procedure is one in which "a medical doctor anesthetizes a patient and a chiropractor performs a manipulation of the patient during the time the patient is anesthetized." SC ¶ 7; YC ¶ 7; OC ¶ 7.

Plaintiffs allege that MUAs are a legal procedure in California. SC ¶ 7; YC ¶ 7; OC ¶ 7. In support of this conclusion, plaintiffs cite a policy from the Board of Chiropractic Examiners of the State of California dated September 13, 1990. SC ¶ 7; YC ¶ 7; OC ¶ 7. This policy, plaintiffs assert, provides "that a proper chiropractic

adjustment, if within the scope of practice of § 302, is not made illegal simply because the patient is under anesthesia." SC ¶ 7; YC ¶ 7; OC ¶ 7.

## 2. Travelers Initiates Criminal Investigations

Plaintiffs allege that non-moving Defendant Travelers owed them and the business entities of which they were members, payment "for lawful chiropractic services provided by each through the workers' compensation system." SC ¶ 3; YC ¶ 3; OC ¶ 3. Plaintiffs allege that as a result, non-moving defendant Reynolds, an employee of Travelers, "prepared and submitted a 'Request for Criminal Prosecution' to the San Joaquin County District Attorneys Office" for the prosecution of plaintiffs and other California chiropractors utilizing the MUA technique. SC ¶¶ 4, 9; YC ¶¶ 4, 9; OC ¶¶ 4, 9. The basis of Reynolds' request was that the practice of MUAs by chiropractors was illegal in California. SC ¶ 9; YC ¶ 9; OC ¶ 9. Plaintiffs allege that Reynolds submitted this report in order to benefit Travelers. SC ¶ 9; YC ¶ 9; OC ¶ 9. Specifically, they allege that Travelers sought to avoid paying chiropractors, including plaintiffs, for MUAs they performed. SC ¶ 9; YC ¶ 9; OC ¶ 9. Plaintiffs also allege that Travelers and other workers' compensation insurance carriers "had unsuccessfully challenged MUA payments ow[ed] to licensed chiropractors before the Workers' Compensation Appeals Board, and in other forums." SC ¶ 9; YC ¶ 9; OC ¶ 9.

Additionally, plaintiffs allege that Weydert and Coffey, "with the knowledge and approval of the County" District Attorney's Office, "and in furtherance of policies and procedures of that office, made public statements to the electronic media, print press, and in other public forums, falsely stating that [plaintiffs] had committed criminal acts, fraudulent acts, and [were] engaged in unlawful and sham activities in violation of [their] chiropractic license[s]." SC ¶ 14; YC ¶ 14; OC ¶ 14. Furthermore, plaintiffs allege that Coffey and nonmoving defendant Reynolds acted with malice towards plaintiffs by making statements while aware that plaintiffs had not violate the law for the sole purpose of "providing financial benefit to Travelers and other insurance companies by providing a pretext to deny payments to chiropractors, including plaintiff[s], for the performance of past lawful MUAs, and the intimidation of all chiropractors within the State of California from performing lawful MUAs, or seeking payment of sums owed to them by Travelers and other insurance companies for the lawful performance of MUAs because of fear of criminal prosecution." SC ¶ 14; YC ¶ 4; OC ¶ 14. Plaintiffs do not allege that Weydert acted with malice. SC ¶ 10; YC ¶ 10; OC ¶ 10.

## 3. District Attorney Files and Dismisses Criminal Charges Against Plaintiffs

With the assistance of Reynolds and Travelers, moving defendants Deputy District Attorney Weydert and Coffey, an investigator for the District Attorney, filed criminal complaints against plaintiffs. SC ¶¶ 6, 10; YC ¶¶ 6, 10; OC ¶¶ 6, 10. Moreover, it is alleged that, Reynolds "interviewed witnesses, prepared court documents, provided and prepared evidence for court hearings, drafted legal and factual arguments, and in other ways substantially assisted in the ... prosecution of plaintiffs." SC ¶ 10; YC ¶ 10; OC ¶ 10. "Travelers provided financial assistance to the County and to Reynolds and Coffey to pay for the expenses of the prosecutions." SC ¶ 10; YC ¶ 10; OC ¶ 10. Plaintiffs allege that defendants were aware of the California Board of Chiropractic Examiners policy and the Workers' Compensation board approval of MUAs, and that no charges had ever been brought against

chiropractors in California for performing MUAs. SC ¶¶ 7, 11, 12; YC ¶¶ 7, 11, 12; OC ¶¶ 7, 11, 12.

On January 5, 2005, Weydert and the District Attorney of San Joaquin County filed a criminal complaint in the Superior Court of California, County of San Joaquin against Origel. OC ¶ 6. Origel was charged with numerous felonies, including the uncertified practice of medicine, unlawful client or patient referral, conspiracy to commit a crime, grand theft of personal property, forgery, worker's compensation false statements, making false or fraudulent claims, money laundering, and unlawful rebates. *Id.* On July 29, 2008, Weydert and the district attorney filed an amended information charging Origel with the following felonies, making false and fraudulent claims, worker's compensation false statements, insurance fraud, money laundering, uncertified practice of medicine, and several theft charges. *Id.* Origel alleges that on November 20, 2008, the court dismissed all charges against Origel "in the interests of justice." [1] *Id.*

On August 23, 2005, Weydert and the District Attorney filed another criminal complaint against Vaezi and Sausedo. SC ¶ 6. Vaezi and Sausedo were charged with the uncertified practice of medicine and the filing of false worker's compensation statements. SC ¶ 6. On March 11, 2008, all charges against Sausedo were dismissed by the court upon motion of the district attorney "in the interests of justice, and for insufficient evidence." *Id.* On the same day, the court dismissed all charges against Vaezi due to "insufficient evidence and in the interest of justice." *Id.*

Also on August 23, 2005, Weydert and the district attorney filed a complaint against Yates along with Ambrose. YC ¶ 6. In addition to the charges brought against Vaezi and Sausedo, Yates and Ambrose were charged with making false and fraudulent claims, conspiracy to commit a crime, unlawful rebates, and several felonies of theft and/or the taking of property. *Id.* All charges against Yates were dismissed by the court "in the interests of justice." [2] *Id.*

Plaintiffs allege that they were "subject to search, seizure, and arrest, and [were] held in custody and under legal disabilities.... As a result of the conduct ... plaintiff[s] ... [were] deprived of [their] ... rights to lawfully practice [their] profession as licensed chiropractors ... [and of their] rights to speak freely and practice [their] profession." SC ¶ 13; YC ¶ 13; OC ¶ 13.

## II. STANDARD FOR A FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS

A Federal Rule of Civil Procedure 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. In general, these requirements are established by Federal Rule of Civil Procedure 8.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing

---

1. At oral argument, defendants informed the court that Origel was tried and that the trial resulted in a hung jury. If true, Origel's allegations concerning the dismissal of criminal charges against him merely mentioning a dismissal in the interest of justice is misleading and may border on sanctionable conduct.

2. Defendants have presented some evidence that criminal proceedings against Yates proceeded to a preliminary examination. Yate's allegations concerning the dismissal of the criminal proceedings, however, do not at all reflect this posture. Rather, they mirror the allegations for Saucedo and Vaezi. While perhaps not sanctionable conduct, the court notes that Yates must accurately and clearly plead facts within his knowledge.

that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S., 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal,* ─── U.S. ───, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id.* at 1949–50. *Iqbal* and *Twombly* therefore proscribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Id.; Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[3]

"Plausibility," as it is used in *Twombly* and *Iqbal,* does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

The line between non-conclusory and conclusory allegations is not always clear. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). While Twombly was not the first case that directed the district courts to disregard "conclusory" allegations, the court turns to *Iqbal* and *Twombly* for indications of the Supreme Court's current understanding of the term. In *Twombly,* the Court found the naked allegation that "defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry ... and ha[d] agreed not to compete with one another,'" absent any supporting allegation of underlying details, to be a conclusory statement of the elements of an anti-trust claim. *Id.* at 1950 (quoting *Twombly,* 550 U.S. at 551, 127 S.Ct. 1955). In contrast, the *Twombly* plaintiffs' allegations of "parallel conduct" were not conclusory, because plaintiffs had alleged specific acts argued to constitute parallel conduct. *Twombly,* 550 U.S. at 550–51, 556, 127 S.Ct. 1955.

*Twombly* also illustrated the second, "plausibility" step of the analysis by providing an example of a complaint that failed and a complaint that satisfied this step. The complaint at issue in *Twombly* failed. While the *Twombly* plaintiffs' allegations regarding parallel conduct were

---

**3.** As discussed below, the court may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. *See Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987), *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987).

non-conclusory, they failed to support a plausible claim. *Id.* at 566, 127 S.Ct. 1955. Because parallel conduct was said to be ordinarily expected to arise without a prohibited agreement, an allegation of parallel conduct was insufficient to support the inference that a prohibited agreement existed. *Id.* Absent such an agreement, plaintiffs were not entitled to relief.[4] *Id.*

In contrast, *Twombly* held that the model pleading for negligence demonstrated the type of pleading that satisfies Rule 8. *Id.* at 565 n. 10. This form provides "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway." Form 9, Complaint for Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C.App., p 829. These allegations adequately " 'state[ ] . . . circumstances, occurrences, and events in support of the claim presented.' " *Twombly*, 550 U.S. at 556 n. 3, 127 S.Ct. 1955 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 94, 95 (3d ed.2004)). The factual allegations that defendant drove at a certain time and hit plaintiff render plausible the conclusion that defendant drove negligently.

---

4. This judge must confess that it does not appear self-evident that parallel conduct is to be expected in all circumstances and thus would seem to require evidence. Of course, the Supreme Court has spoken and thus this court's own uncertainty may be noted, but cannot form the basis of a ruling.

5. Plaintiffs request an opportunity to discover the District Attorney's policy and procedure. Discovery in this district is before the Magistrate Judges and the court makes no ruling on that matter.

6. As a prosecutor, Weydert is entitled to absolute, prosecutorial immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268–69, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). "In determining whether particular actions of government officials fit within a common-law tradi-

## III. ANALYSIS

### A. Plaintiffs' Conceded Claims

Defendants County, Coffey, and Weydert have moved to dismiss all claims against them. In their oppositions, plaintiffs concede that their conspiracy claim under 42 U.S.C. § 1985 should be dismissed. Sausedo Opposition ("SO") at 11; Origel Opposition ("OO") at 8. Plaintiffs also concede that they have not sufficiently pled a claim against the County for liability under 42 U.S.C. § 1983. SO at 11; OO at 8. For these reasons, the court grants County, Coffey, and Weydert's motion to dismiss the conspiracy claims under § 1985, and grants the County's motions to dismiss all claims against it under § 1983. Both claims are dismissed without prejudice.[5]

### B. Whether Weydert and Coffey are Entitled to Qualified Immunity.[6]

#### 1. Grounds for Qualified Immunity

█ Defendants argue that they are entitled to qualified immunity because it is not clearly established that MUAs are legal. Weydert and Coffey are "entitled to qualified immunity where clearly established law does not show" their actions

---

tion of absolute immunity, or only the more general standard of qualified immunity, we have applied a functional approach, . . . which looks to the nature of the function performed, not the identity of the actor who performed it." *Id.* at 269, 113 S.Ct. 2606 (internal quotations omitted). Here, plaintiffs have alleged facts that Weydert violated their constitutional rights through actions that both constitute prosecutorial and nonprosecutorial functions. *See* November 13, 2008 Order, Doc. No. 29, for a discussion of the actions that constitute prosecutorial functions. However, because the court holds that Weydert is entitled to qualified immunity for all claims alleged against him, the court need not distinguish between those actions for which Weydert is entitled to absolute immunity and those for which he is entitled to qualified immunity.

violated the Constitution. *Pearson v. Callahan*, 555 U.S. ——, 129 S.Ct. 808, 822, 172 L.Ed.2d 565 (2009). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 823. Consequently, Weydert and Coffey are immune from "civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 815 (internal quotation omitted).

In this case, the issue of qualified immunity does not concern whether it is clearly established that Weydert and Coffey could arrest and prosecute plaintiffs without probable cause or prevent them from lawfully practicing their professions. Rather, the issue defendants argue is not clearly established is the basis for all claims alleged by plaintiffs, namely whether the MUAs were legal, or in other words, whether defendants could have reasonably believed that they were prosecuting plaintiffs for a violation of state law. As an initial matter, the court must decide whether it is clearly established that the performance of MUAs by licensed chiropractors in California is legal.

As discussed above, plaintiffs allege in their complaints that MUAs are legal procedures because of a policy of the Board of Chiropractic Examiners of the State of California indicating that chiropractic adjustments are not made illegal because they are performed under anaesthesia and because no chiropractors had ever been prosecuted for performing MUAs in California. In their oppositions, plaintiffs argue, in essence, that the actions of chiropractors in performing MUAs never exceeded the statutory limits on the practice of chiropractors because a doctor administers and monitors the anaesthesia, chiropractors only perform legal manipulations during the procedure. Plaintiffs continue

to argue that there is no authority that explicitly states that MUAs are illegal. Finally, plaintiffs distinguish the cases cited by defendants on the grounds that they do not "involve[ ] a chiropractor performing manipulation in conjunction with other professionals." Plaintiffs have made a reasonable argument that MUAs are legal under California law. However, to escape qualified immunity, plaintiffs must show that no reasonable deputy district attorney or investigator could reasonably believe that MUAs were illegal.

Defendants primarily refer to the interpretation of the Chiropractic Initiative Act of 1922 ("Act") by California courts. The primary case relied upon by defendants is *Tain v. State Board of Chiropractic Examiners*, 130 Cal.App.4th 609, 30 Cal. Rptr.3d 330 (Cal.Ct.App.2005). This decision, however, was issued on July 22, 2005, which was several months after a criminal complaint was filed against Origel, yet a month prior to the filing of charges against the other plaintiffs. Consequently, to the extent that new interpretations of the Act were utilized in *Tain*, they cannot be considered when deciding whether it was clearly established that MUAs were lawful with respect to Origel's claims alone. Nonetheless, to the extent that *Tain* relies upon *Crees v. California State Board of Medical Examiners*, 213 Cal.App.2d 195, 28 Cal.Rptr. 621 (Cal.Ct.App.1963), and *People v. Fowler*, 84 P.2d 326, 32 Cal. App.2d. Supp. 737 (Cal.App.Super.1938), defendants' analysis is relevant to consideration of whether the law was clearly established when the complaint was filed against Origel.

Section 7 of the Act states that a chiropractic license "shall authorize the holder thereof to practice chiropractic in the State of California as taught in chiropractic schools or colleges; ... but shall not authorize the practice of medicine, ... nor

the use of any drug or medicine." Cal. Bus. & Prof.Code § 1000–7. The Board of Medical Examiners has promulgated a regulation opining on the effect of section 7 of the Act.[7] This regulation states that, "A chiropractic license issued in the State of California does not authorize the holder thereof . . . to use any drug or medicine." Cal.Code Regs., tit. 16, § 302(a)(4).

California courts have interpreted the Act to limit chiropractors " 'to the practice of chiropractic and the use of mechanical, hygienic and sanitary measures incident to the care of the body, which do not invade the field of medicine and surgery, irrespective of whether or not additional phases of the healing art, including medicine and surgery or the use of drugs, may have been taught in chiropractic schools or colleges' and . . . irrespective of whether any such additional phases have actually been used by some chiropractors illegally as part of professional treatment." *Crees*, 213 Cal.App.2d at 205, 28 Cal.Rptr. 621 (quoting *Fowler*, 32 Cal.App.2d Supp at 748, 84 P.2d 326).

California courts have held "that the permissible limits of practice by the holder of a chiropractic license did not extend beyond the scope of 'chiropractic' as that term was understood and defined in 1922, when voters adopted the Chiropractic Act." *Tain*, 130 Cal.App.4th at 621, 30 Cal.Rptr.3d 330 (citing *Crees*, 213 Cal. App.2d at 204, 28 Cal.Rptr. 621).[8] Specifically, when ascertaining the meaning of the term chiropractic in 1922, "the *Fowler* court . . . referr[ed] to several commonly used dictionaries available at the time the Chiropractic Act was enacted [in 1922], including the 'Standard Dictionary, 1913

edition,' which defined 'chiropractic' as 'A drugless method of treating disease chiefly by manipulation of the spinal column.' " *Tain*, 130 Cal.App.4th at 620, 30 Cal. Rptr.3d 330 (quoting *People v. Fowler*, 32 Cal.App.2d Supp. 737, 745, 84 P.2d 326 (1938)). Plaintiffs have not argued or presented any evidence that MUAs were performed by chiropractors in 1922. Of course, the defendants have not tendered such evidence either. Nonetheless, the burden is on the plaintiff and their failure appears dispositive, given the California courts construction of the statute. *See Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir.2009) ("Plaintiff must . . . demonstrate that the constitutional rights at issue were clearly established at the time of [defendant's] conduct.")

 The plaintiffs' argument rests on their assertion that they perform only traditional chiropractic practice, and it is the M.D. who administers anaesthesia. Even assuming that such an argument is persuasive, the issue is whether a reasonable D.A. (or investigator) would know that such conduct was lawful. Under the circumstances, the court concludes that a reasonable prosecutor or investigator could have relied on the language in *Fowler* that the practice of chiropracty is drugless to conclude that any use of drugs, regardless of who administers them, violates the Chiropractic Act.

Moreover, a few months after defendants filed criminal charges against plaintiffs, the Office of Administrative Law of the State of California expressed concern that the terms of the Chiropractic Act may prohibit the practice of MUAs by chiropractors, yet declined to decide the matter due to an insufficient record.[9] Specifically,

---

**7.** It is not clear to the court what authority the Board of Medical Examiners has to define chiropractic practice, as is made of the administrative infighting, it appears besides the point.

**8.** Such an interpretation appears to forbid the practice of any technique developed by virtue of new scientific developments in the field and appears not to be consistent with the plain language of the initiative.

**9.** In their motions, defendants seek judicial

the office reasoned that there is "a question of whether this regulation [to allow MUAs] is consistent with the provisions of section 7 of the [Chiropractic] Act providing that a license to practice chiropratic 'shall not authorize . . . the use of any drug or medicine.'" State of California Office of Administrative Law, Decision of Disapproval of Regulatory Action, OAL File No. 05–0826–03 S (October 11, 2005). The office continued to state that while the proposed regulation "does not authorize a chiropractor to *administer* anesthesia," it may nonetheless violate the terms of the Act. *Id.* (emphasis in original). Specifically, the office argued that the term "use" is broader than the term "administer, and the Act prohibits the *use* of any drug or medicine in the practice of chiropractic." *Id.* (emphasis in original). "If the use of anaesthesia is integral to the performance of MUA, and if anaesthesia is a 'drug,' it is highly questionable whether the regulation is consistent with the Act's prohibition on 'the use of any drug or medicine.'" *Id.* Thus, at approximately the same time that defendants filed charges against plaintiffs, a state agency expressed concern that the practice of MUAs by chiropractors may violate the Chiropractic Act's prohibition on the use of drugs. This reasoning provides further support that the law was not clearly established as to whether MUAs

were lawful at the time defendants filed criminal charges against plaintiffs, and consequently, that defendants may have reasonably believed that MUAs were unlawful.[10]

Based on California case law, plaintiffs can, and do, make a reasonable argument that MUAs are not prohibited because a doctor administers the anaesthesia. However, a reasonable attorney or investigator could view the same statute and case law and conclude that the practice of MUAs was illegal in that a chiropractor performs a procedure with the use of drugs. Because the law was not clearly established, defendants are entitled to qualified immunity to the extent that plaintiffs' claims rely on MUAs being lawful.

### 2. Application to Plaintiffs' Claims Under § 1983

#### a. Plaintiffs' First Amendment Claims

Plaintiffs allege that defendants violated the First Amendment by depriving them of their "right(s) to speak freely and practice their profession." SC ¶ 13; YC ¶ 13; OC ¶ 13. Plaintiffs allege no facts to support a claim that their right to speak freely was limited. As such, plaintiffs have not stated a claim for relief under that theory.[11]

notice of and cite to a decision of the Office of Administrative Law for the State of California, which disapproved of a California Board of Chiropractic Examiner's proposed regulatory amendment permitting licensed chiropractors to perform MUAs because the regulation did not comply with the "consistency, authority, necessity, and clarity standards of the Administrative Procedure Act." This decision is judicially noticeable because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed.R.Evid. 201(b). However, it is not relevant to determine whether the law concerning MUAs was legal at the time defendants initiated criminal charges against plaintiffs. Specifically, the

decision was issued on October 11, 2005, and criminal complaints were filed against plaintiffs in January and August of 2005. Nonetheless, the reasoning in this decision does bear upon whether a reasonable person at around the same time could have reached a conclusion that MUAs were illegal.

10. While, of course, the court need not, nor does it take sides in the interagency scuffle, the court notes the Office's opinion to demonstrate the unsettled nature of the controversy.

11. To the extent that any alleged violation arises by virtue of plaintiffs' claims that MUAs are lawful, the uncertain state of the law would also preclude this cause of action.

### b. Plaintiffs' Fourth Amendment Claims

Similarly, plaintiffs' Fourth Amendment claims for unlawful search, seizure, and arrest depend upon their being "no factual or legal basis for their prosecution" and investigation. SC ¶ 12; YC ¶ 12; OC ¶ 12. Because it is not clearly established that MUAs are legal, it is not clearly established that plaintiffs were searched, seized, and arrested without probable cause (i.e. without a legal or factual basis). For these reasons, Weydert and Coffey are entitled to qualified immunity on plaintiffs' Fourth Amendment claims.

### c. Plaintiffs' Due Process Claims

In their opposition, plaintiffs identify their claims as substantive due process, however plaintiffs' complaints and arguments in the opposition suggest that they actually have pled a procedural due process claim. Specifically, plaintiffs allege that they were "deprived ... of their ... rights to lawfully practice their profession ... without due process of law." SC ¶ 13; YC ¶ 13; OC ¶ 13. Nonetheless, regardless of which sort of due process claim plaintiffs have alleged, their claim relies upon their practice being lawful. As described above, it is not clearly established that plaintiffs' performance of MUAs was lawful, and, as such, Weydert and Coffey are entitled to qualified immunity for this claim as well.

### d. Plaintiffs' Malicious Prosecution Claims

■ As described in this court's previous order concerning the motion to dismiss Ambrose's complaint, Doc. No. 29, to succeed on a malicious prosecution claim, plaintiffs must show that the proceeding was (1) pursued to a legal termination favorable to the plaintiff; (2) brought with-

out probable cause; (3) initiated with malice; and (4) brought for the purpose of denying a specific constitutional right. *See Womack v. County of Amador*, 551 F.Supp.2d 1017, 1031 (E.D.Cal.2008). Because it is not clearly established whether MUAs are lawful, it is also not clearly established that Weydert and Coffey brought criminal proceedings against plaintiffs without probable cause. Defendants could have reasonably believed that plaintiffs conduct was unlawful, and because plaintiffs admit that they were performing MUAs, the proceedings were brought with probable cause. Thus, Weydert and Coffey are entitled to qualified immunity as to plaintiffs' malicious prosecution claims.

## IV. CONCLUSION

For the foregoing reasons, defendants County of San Joaquin, Gary Coffey, and James C. Weydert's motions to dismiss plaintiffs Richard Sausedo and Pedram Vaezi's, Michael Yates's and Wilmer D. Origel's complaints are GRANTED. Complaints are dismissed without prejudice as to these defendants, and with leave to amend.[12] Plaintiffs are given twenty (20) days from the date this order is issued to file any amended complaints.

IT IS SO ORDERED.

---

12. The court grants leave to amend for theories of liability that do not depend on MUAs being legal and theories for which Weydert and Coffey would not be entitled to qualified immunity.